W. HOWARD BASS AND OSCAR W. BASS, D/B/A THE FAYETTEVILLE LINEN SUPPLY v. MRS. JEANNE DICKERSON BREWER

4624                                                 431 S.W. 2d 458

Opinion Delivered September 9, 1968

*Ball & Gallman* for appellant.

*James O. Burnett* for appellee.

J. Fred Jones, Justice.    Mrs. Brewer brought suit in the Washington County Circuit Court against Howard Bass and Oscar Bass, d/b/a The Fayetteville Linen Supply, for overtime pay, unpaid wages and liquidated damages, under the Fair Labor Standards Act of 1938, Title 29, U.S.C.A. §§ 203-216.    The trial court entered summary judgment for Mrs. Brewer on her motion therefor, and on appeal to this court Linen Supply relies on the following points for reversal:

> "1.    The lower court erred in finding there were no genuine issues of material facts regarding whether Mrs. Brewer was engaged in commerce or engaged in the production of goods for commerce or engaged in activities directly essential and closely related to the production of goods for commerce.

> "2.    The lower court erred in finding there were no genuine issues of material facts regarding Fayetteville Linen Supply's claimed exemption from the provisions of the Fair Labor Standards Act, and thereby holding that Mrs. Brewer was entitled to judgment as a matter of law."

The entire proof of the facts alleged by Mrs. Brewer is contained in the answer to the complaint and the answers to interrogatories she propounded to Linen Supply.    These answers establish an employer-employee relationship between the parties from March 19, 1965, until April 4, 1966, on an eight hour per day and forty hours per week basis.    They establish that Mrs. Brewer's duties consisted of feeding a flatwork ironer, folding the flatwork and pressing pants for which she was paid a regular hourly wage of 75 cents, later raised to 80 cents, then to 85 cents, and finally to 90 cents per hour.    Overtime work at regular wage scale was also established.

Linen Supply stated, in answer to interrogatories, that it was primarily engaged in the business of laundering and renting linens and garments consisting of such items as small towels for cleaning counters and tables, turkish towels used by barbers and beauticians, hair cloths used by barbers, turkish towels for cleaning grills, covers for dining tables, table napkins, bib aprons worn by food processors and stock replinishers, pants and shirts worn by workmen, uniforms worn by nurses, waitresses, etc., smocks worn by barbers and pharmacists, butcher coats used by food processors, steward coats worn by houseboys, waiters, etc., shop towels used by garages for cleaning cloths, sheets and pillow cases used on daybeds for rest by some customers, and dust mops and mats used for dust control in business houses. Linen Supply stated that it purchased its stock of items from various concerns outside the state of Arkansas; that its gross income from business in 1965 amounted to $125,000 and in 1966 amounted to $156,000. Linen Supply answered that its ten largest customers for 1965, in the order of highest volume of business, were Campbell Soup Company, Ralston Purina Company, Tyson's Foods, Inc., Lewis Ford Sales, Inc., Chicken Shack, Wheeler Volkswagen, IGA Thriftway Stores, Shipley Baking Company, Buck's Vaccination Service, Burger Broil, and for the year 1966, such customers, in the same order of business volume were, Ralston Purina Company, Campbell Soup Company, Tyson's Foods, Inc., Lewis Ford Sales, Inc., Chicken Shack, Prince Mfg. Co., Wheeler Volkswagen, IGA Stores, 62 Truck Stop, Fayetteville Country Club Kitchen.

As to out of state business, the record reveals answers to interrogatories as follows:

"Q. In what States, other than the State of Arkansas, does the defendant do business?

A. One stop in Missouri."

Following up on the question of out of state business, additional interrogatories were propounded and answered as follows:

"Q. Calling attention to your answer to Interrogatory number 23, has the Fayetteville Linen Supply made this stop in Missouri in both the year 1965 and 1966?  If the answer is 'No' please state the exact dates of all stops for the year in which calls were made.

A. From May 31, 1962 through December 1966.

Q. State the full name of firm name and address of the person or firm with whom business was conducted in Missouri.

A. Ralston Purina Company, Noel, Missouri.

Q. State separately for the year 1965 and 1966 your gross volume of business with this Missouri customer.

A. 1965—$  557.20
1966—$2,529.46

Q. State separately for the year 1965 and 1966 your gross volume of business, to the nearest one-hundred, conducted with the following:

(a)  Ralston  Purina  Co.

(b)  Tyson's  Food,  Inc.

(c)  Lewis  Ford  Sales,  Inc.

(d)  Wheeler  Volkswagen

(e)  Prince  Mfg.  Co.

(f)  62  Truck  Stop

| A. | | 1965 | 1966 |
|---|---|---|---|
| (a) | Ralston Purina Co., May-Dec. | $2,454.00 | $19,496.00 |

   (b)   Tyson's Food, Inc., Not Available   6,061.00

   (c)   Lewis Ford Sales, Inc., Not Available 3,452.00

   (d)   Wheeler Volkswagen, Dec. 257.00   2,532.00

   (e)   Prince Mfg. Co.,   Not Available   2,840.00

   (f)   62 Truck Stop   Not Available   2,067.00

Dated this 30th day of May, 1967."

This constituted the evidence of record from which the trial court, as a matter of law, found Mrs. Brewer "to be engaged in commerce and/or engaged in the production of goods for commerce" and granted summary judgment on her motion therefor. We agree that the trial court erred on both points relied on for reversal.

The Arkansas Legislature adopted Rule 56 of Federal Rules of Civil Procedure governing summary judgments in 1961. Act 123 of 1961, Ark. Stat. Ann. § 29-211 (Repl. 1962). Subsection (a) of § 29-211, insofar as it relates to this case, provides:

> ". . . A party seeking to recover upon a claim, counter-claim, or crossclaim or to obtain a declatory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits, for a summary judgment in his favor upon all or any part thereof."

Subsection (c) of § 29-211, as amended in 1967, and insofar as it relates to this case, provides:

> ". . . The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law . . .''

In the case at bar, Mrs. Brewer's entire cause of action depended upon facts that were not proven.    She alleged that she was an employee and that the appellant was an employer within the *definition* of 29 U.S.C.A., § 203.    This section is broad and simple indeed.    It defines employer and employee as follows:

> ''(d)  'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee but shall not include the United States or any State or political subdivision of a State, or any labor organization (other than when acting as an employer), or anyone acting in the capacity of officer or agent of such organization.

> ''(e)  'Employee' includes any individual employed by an employer.''

Linen Supply denied the employer-employee relationship within the definition of the act, but we conclude that Mrs. Brewer established that relationship by proof of record.

Mrs. Brewer alleged that Linen Supply's establishment was engaged in the business of laundering, cleaning, or repairing of uniforms, linens, clothing, or fabrics; that more than fifty per cent of the establishment's annual volume of sales of service were made outside the State of Arkansas within the *meaning* of 29 U.S.C.A., § 213 (a) (3), and that more than twenty-five per cent of the annual dollar value of sales, or gross receipts, were derived from customers engaged in manufacturing, transportation or communications business within the meaning of the preceding section of the act.

Linen Supply admitted in its answer to the complaint, that it was engaged in the business of laundering, cleaning, or repairing of uniforms, linens, clothing

or fabrics, but it denied the allegation that it was engaged in commerce within the meaning of the act.

Now, 29 U.S.C.A., § 213 is the exemption section of the Fair Labor Standards Act, and subsections (a) (3) of § 213 are as follows:

"(a) The provisions of sections 206 and 207 of this title shall not apply with respect to—

"(3) any employee employed by any establishment engaged in laundering, cleaning, or repairing clothing or fabrics, more than 50 per centum of which establishment's annual dollar volume of sales of such services is made within the State in which the establishment is located: *Provided,* That 75 per centum of such establishment's annual dollar volume of sales of such services is made to customers who are not engaged in a mining, manufacturing, transportation, or communications business; . . ." *

Mrs. Brewer rested her proof, and based her motion for summary judgment, on the answers to the interrogatories propounded to the appellant. Assuming that the proof of "one stop in Missouri" with a gross business of $557.20 in 1965, and $2,529.46 in 1966, was sufficient evidence that appellant was engaged in commerce *within the meaning* of the act, the evidence is woefully short of proof that more than fifty per cent of the annual volume of sales of service were made outside the State of Arkansas within the meaning of 29 U.S.C.A., § 213 (a) (3) and that more than twenty-five per cent of the annual dollar value of sales, or gross receipts were derived from customers engaged in manufacturing, transportation, or communications business within the meaning of the preceding section of the act.

---

*This section was amended on September 12, 1966, Pub. L. 89-601, Title V, § 501, 80 Stat. 842, but the amendment is not retroactive to the claim here.

110

Assuming further that the burden shifted to Linen Supply to prove the affirmative to the alleged negative, the evidence does not show what business Linen Supply customers are engaged in. In other words, the evidence is clear that Mrs. Brewer fed a flatwork ironer, folded the flatwork, and pressed pants in the course of her employment, but the record is silent as to whether Linen Supply's one customer in Missouri, or any of its other customers as for that matter, rented or used the flatwork or pants Mrs. Brewer folded and pressed, or whether they rented or used dust mops and mats with which she apparently had no connection.

A mere glance at the footnotes under Ark. Stat. Ann. § 29-211 (Repl. 1962) will show that the office of the summary judgment, as well as its limitations, are well established and clearly announced in Arkansas:

> "The theory underlying a motion for summary judgment is the same as that underlying a motion for a directed verdict and any testimony which is submitted with the motion must be viewed in the light most favorable to the party resisting the motion with all doubts and inferences being resolved against the moving party. *Russell* v. *Rogers*, 236 Ark. 713, 368 S.W. (2d) 89.

> "Summary judgment will only lie where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Weathers* v. *Springdale*, 239 Ark. 535, 300 S.W. (2d) 125.

> "Where the pleadings show there is a genuine issue as to a material fact, summary judgment should not be granted. *United Press International, Inc.* v. *Hernreich*, 241 Ark. 36, 406 S.W. (2d) 317; *United Press International, Inc.* v. *Hernreich*, 241 Ark. 33, 406 S.W. (2d) 322.

"Where there are essential issues of fact still unresolved the record does not justify a summary disposition of the litigation. *Griffin* v. *Monsanto Co.,* 240 Ark. 420, 400 S.W. (2d) 492.

"Where there is no doubt that there was presented a jury question as to a material fact it is error for a trial court to enter a summary judgment under paragraph (c) of this section. *Kealy* v. *Lumbermen's Mut. Ins. Co.,* 239 Ark. 766, 394 S.W. (2d) 629.

"This section is a salutary measure, designed to prevent unnecessary trials where the record shows that there is no genuine issue of fact to be litigated and where the record presents unresolved questions of fact to be resolved by the trial court it was improper to grant a motion for summary judgment. *Kratz* v. *Mills,* 240 Ark. 872, 402 S.W. (2d) 661."

We conclude that the trial court erred in rendering summary judgment on the facts of record in this case, and that this case should be remanded for trial on the merits.

Reversed and remanded.