KRATZ *v.* MILLS

5-3812 402 S. W. 2d 661

Opinion delivered May 16, 1966

*Martin K. Fulk, Cooper Jacoway,* for appellant.

*H. B. Stubblefield; Rose, Meek, House, Barron, Nash & Williamson; Gregory & Claycomb,* and *Wright, Lindsey & Jennings,* for appellee.

GUY AMSLER, Justice. This is an appeal by Claire B. Kratz and Claire Knighten Lake (plaintiffs below) from a summary judgment.

Twin City Development Company was incorporated in 1915 and purchased property in Pulaski County, Arkansas. In 1923, the corporate charter was forfeited for failure to pay franchise taxes to the State of Arkansas. According to the corporation stock book, 200 shares of Twin City stock were outstanding. The stockholders at the time of forfeiture were Charles H. Miller, 25 shares; A. C. Butterworth, 25 shares; Ben. J. and M. L. Altheimer, 50 shares; ·C. G. Price, 25 shares (later transferred to Altheimer by certificate number 19 dated November 19, 1924); Southern Trust Company and American Southern Trust Company, 75 shares. The interest

of Southern Trust Company and American Southern Trust Company was acquired by G. B. Oliver, Jr. when he purchased the assets of the bankrupt trust companies in the middle or late nineteen hundred thirties. Appellee Mary C. Oliver became the owner of these shares when her husband, G. B. Oliver, Jr., departed this life in December of 1958.

The original stock certificate (No. 12) for 25 shares issued to A. C. Butterworth and dated April 9, 1915, is appended to the stock book and bears this notation: "Transf. to certificate number 20—J. I. Trawick, one share. Transf. to certificate number 21—A. C. Butterworth, 24 shares." Certificates numbered 20 and 21 are not available but the stubs of these, dated February 2, 1927, bear the signatures of Trawick and Butterworth. Attached to the stub of certificate number 20 is a typewritten receipt signed by J. K. Riffel which reads:

> "Received certificate number 20 of the Twin City Development Company for one (1) share, this 24 day of March, 1927."

A similar receipt by Riffel is attached to the stub of certificate number 21. Riffel was a local attorney whose connection with Twin City or the stockholders is not shown by the record.

Butterworth moved to St. Louis, Missouri, in 1927, and lived there until his death in 1947. The appellant Claire B. Kratz is his only living child and appellant Claire Knighten Lake, a granddaughter, is his only other living heir. They both live in California.

Ben J. Altheimer died on May 29, 1946. During his lifetime he created "The Ben J. Altheimer Foundation" and in the course of the administration of his estate questions arose as to which assets went to the foundation and which belonged to the estate. These differences resulted in litigation which delayed closing the administration of his estate until September 12, 1950.

On some uncertain date, subsequent to September 12, 1950, the Altheimer people learned that Ben J. Altheimer at the time of his death owned an interest in some Pulaski County property by virtue of having been a stockholder in the Twin City Development Company. The property had greatly increased in value following the depression years of the early nineteen hundred thirties.

There appears to have been no dispute regarding the Altheimer ownership in Twin City. However, a disagreement arose as to whether the Altheimer interest in the Twin City property belonged to the foundation or to the Altheimer estate. Protracted litigation, which was terminated in October of 1961, ensued. Appellants Kratz and Lake were not parties to this litigation, which arose in Jefferson County, Arkansas, and ended in this court. *Selig* v. *Morrison,* 230 Ark. 216, 321 S. W. 2d 769; *Selig* v. *Barnett,* 233 Ark. 900, 350 S. W. 2d 176.

The records before us are rather devoid of information regarding Twin City activities from 1923 until 1949. The amount of taxes paid on the Twin City land is shown, but who made these payments is not clear. During the period 1949-1951 Twin City conveyed, by corporate deeds, several parcels of its land. Appellee Mary C. Oliver executed the deeds as secretary of the corporation while G. B. Oliver, Jr. is shown as president. Just when the corporation was revived or reactivated, if ever, is not shown by the record.

Again the records are not definite, but apparently during the early part of 1953 the Olivers, Millers and the Altheimer representatives became desirous of partitioning what remained of the Twin City lands. They were aware, and had been all along, of what the stock book showed regarding the shares issued to Butterworth.

They must also have known that appellant Kratz was an heir of Butterworth because on July 31, 1953, the

attorney for the widow of C. H. Miller addressed a letter to her at 1615 Lasuen Road, Santa Barbara, California, making inquiry regarding the Twin City stock issued to Butterworth. Having received no reply to that communication the attorney wrote Mrs. Kratz again on September 22, 1953. During the succeeding four or five weeks the attorney for Miller and Mrs. Kratz personally corresponded with the Guaranty Trust Company of St. Louis, which was understood to be handling the Butterworth estate. The Trust Company had no information regarding the Twin City stock certificate and neither did Mrs. Kratz.

Within a reasonably short time after the exchange of these communications Mrs. Kratz employed local counsel who discussed the problem with the attorneys for Miller and Altheimer. In the course of these negotiations, probably during late 1953 or early 1954, the attorney for Miller informed the attorney for Mrs. Kratz that they (the attorneys for Miller and Altheimer) had decided to file partition proceedings in the Pulaski Chancery Court so that all the parties, including Mrs. Kratz, could present their claims. This procedure was approved by the Kratz attorney. The affidavit of her attorney regarding this assurance stands undisputed. Mrs. Kratz was advised of such proposal by her attorney and gave her approval.

In January of 1959, neither Mrs. Kratz nor her attorney had heard anything further concerning the proposed litigation and an inquiry to Miller's attorney revealed that the plan to seek partition through the Chancery Court had been abandoned. In lieu of such suit the Miller heirs had sold and conveyed their interest in the Twin City lands to Altheimer and then the owners of the Altheimer and Oliver interests had effected partition through an exchange of deeds. An investigation revealed that the exchange of deeds had taken place in 1955.

The deeds were dated July 18, 1955, although not

recorded until March 19, 1956. The information obtained by her attorney, through the attorney for Miller, and the recorded partition (or division) deeds were the first notice to appellant Kratz that the others who claimed to own stock in Twin City were claiming adversely to her.

Certain recitals in the deed from appellee Mary C. Oliver and her husband G. B. Oliver, Jr. to the Altheimer and Miller representatives are of especial significance in disposing of the issues on appeal. Following a description of the property conveyed is this wording:

"The above described property is part of the land acquired by the Twin City Development Company, an Arkansas Corporation, in two deeds, one dated March 15, 1915, and recorded in Record Book 19, at Page 112 and the other dated March 20, 1915, and recorded in Record Book 119, at Page 111 in the office of the Recorder of Pulaski County, Arkansas. The said corporation's authority was revoked on April 23, 1923, for failure to pay the Arkansas corporate franchise tax, but G. B. Oliver, Jr., and Mary C. Oliver, his wife, continued thereafter to act as trustees in managing the property in the interests of the stockholders. An investigation of all available records, including the stock book of the corporation, shows that all of the issued stock of the corporation has been purchased as treasury stock except the following:

75 shares owned by G. B. Oliver, Jr., and Mary C. Oliver

75 shares owned by the trustees of the Estate of Ben J. Altheimer

25 shares owned by the heirs of Charles H. Miller, being namely his wife, Edna Ward Miller, and two daughters, Anne Charlene Miller O'Hair and Edna Ward Miller Howell.

"This deed is executed in consideration of the sum of $1.00 and in consideration of the agreement of the above named persons to partition the remaining lands owned by them as the sole remaining stockholders of the Twin City Development Company, it being the intent of the parties and the purpose of this deed to partition the lands to separate the three-sevenths interest owned by G. B. Oliver, Jr., and Mary C. Oliver from the four-sevenths interest owned by the Altheimer Estate and the heirs of Charles H. Miller."

Upon receipt of the information set forth immediately above and on advice of her attorneys Mrs. Kratz, on June 16, 1960, filed the present suit.

Appellant Kratz sued Charlotte Mills and others as trustees of the estate of Ben Altheimer, the widow and heirs of Charles H. Miller, Mary C. Oliver, widow of G. B. Oliver, Jr. and certain grantees in the corporate deeds previously mentioned as having been executed (during 1949-1951) by the Olivers as officers of the corporation. The last group was later dismissed as defendants and those remaining are the appellees herein. The complaint in finality prayed for cancellation of the deeds between the various Twin City interest holders; that appellant Kratz be declared to have a 12½% interest in the lands; that the remaining lands be partitioned and the part belonging to appellant be set aside to her; and that Mary Oliver be required to account for money received by her and her late husband for Twin City property they conveyed as purported corporate officers. Separate answers were filed by the Altheimer, Miller and Oliver interests denying generally the allegations of the complaint and setting up by way of affirmative defenses the statutes of limitations and nonclaim; estoppel; laches; waiver and abandonment.

Motion for summary judgment was filed by the defendants based on the affidavit of and answers to interrogatories by Mary C. Oliver; the deposition of Mrs.

Kratz; the affidavits of attorneys for Kratz, Altheimer and Miller; copies of the conveyances herein referred to and of communications between the attorney for Miller, Mrs. Kratz, her son (Ben Boren) and the Guaranty Trust Company of St. Louis. Thereafter and before summary judgment was granted, Claire Knighten Lake was permitted to intervene as an heir of Butterworth and adopt Mrs. Kratz' pleadings and prayer for relief.

Appellants rely on one point for reversal, which is: "The Court erred in granting to appellees a summary judgment because this case presents unresolved issues of material fact; and the court failed to resolve the doubts against the party moving for summary judgment."

Appellees contend that any one of 6 grounds independently and standing alone, is sufficient to uphold the chancellor's action. They are listed as:

(i) There is no proof whatever that A. C. Butterworth owned stock in Twin City at the time of his death on November 5, 1947.

(ii) Neither A. C. Butterworth nor appellants paid or offered to pay taxes and special assessments on the lands in question.

(iii) After the fullest possible disclosure to appellant Mrs. Kratz and her representatives in 1953 no action whatever was taken by her until the filing of this suit on June 16, 1960, and no action whatever was taken by appellant Mrs. Lake until she filed her intervention on December 22, 1964, after the filing of the Motion for Summary Judgment.

(iv) Appellants sat by and permitted numerous conveyances for valuable consideration to be made.

(v) Appellants sat by and permitted protracted, vigorously contested and very expensive litigation

to be carried on with reference to the title to the lands, *Selig* v. *Morrison* and *Selig* v. *Barnett*.

(vi) No claim was filed or presented by A. C. Butterworth or any person claiming under him against the estates of Ben J. Altheimer or G. B. Oliver, Jr.

The pleadings, exhibits, and contentions of the parties have been set forth at considerable length in order to obviate the necessity for a lengthy review of the summary judgment law and cases bearing on its use. Our summary judgment procedure, adopted in 1961 [Ark. Stat. Ann. § 29-211 (Repl. 1962)], is a salutary measure, designed to prevent unnecessary trials where the record shows that there is no genuine issue of fact to be litigated. It was taken largely from Rule 56 of the Federal Rules of Civil Procedure.

There are numerous Federal and State cases dealing with the use of this extraordinary remedy. The rationale of those holdings is that summary judgment will be granted only if there is no genuine issue of fact to be decided and the burden rests on movant to demonstrate that no justiciable fact issue exists. *Russell* v. *City of Rogers*, 236 Ark. 713, 368 S. W. 2d 89; *Epps* v. *Remmel*, 237 Ark. 391, 373 S. W. 2d 141; *Universal Life Ins. Co.* v. *Howlett*, 240 Ark. 458, 400 S. W. 2d 294.

We are of the opinion that under our often announced rule the case at bar presents unresolved questions of fact which appellants are entitled to have resolved by the trial court.

No useful purpose would be achieved by pointing out in this opinion all issues of fact that could and may arise on trial of this cause. At the threshhold of this controversy the court is confronted with a determination of whether Butterworth owned stock in Twin City. Facts shown in the record establish prima facie owner-

ship in Butterworth and this alone presents a fact question on which the trial judge is obliged to pass.

It was conceded by appellees that when the Twin City charter was forfeited the stockholders thereupon occupied the relation of co-tenants and if it should be determined that Butterworth owned stock in the corporation at the time it became defunct then the defenses of laches, statutes of limitations and others asserted by appellees become questions of fact that must be resolved by the trial court. 19 Am. Jur. 2d, Corporations, § 1660; *Jamison* v. *Henderson* (1934) 189 Ark. 204, 71 S. W. 2d 696.

Reversed and remanded.