LIFE & CASUALTY INSURANCE COMPANY OF TENNESSEE V.
RONALD NICHOLSON

5-4854 . 439 S.W. 2d 648

Opinion Delivered April 7, 1969
[Rehearing denied May 12, 1969.]

*Chowning, Mitchell, Hamilton & Burrow* for appellant.

*Wilton E. Steed* for appellee.

JOHN A. FOGLEMAN, Justice.    This appeal is taken from a judgment rendered in favor of the mother of appellee, as his guardian.    It was rendered in a suit brought by appellee upon an industrial accident insurance policy issued by appellant on April 4, 1949.    The application for the policy was signed by the mother. The losses insured against were death by accidental means and losses of sight or limb.    The face amount of the

policy became $2,000 after it had been in force for 10 years. The suit was for the loss of the sight of appellee's right eye, for which the benefit payable was one-half the face amount of the policy. In order for the benefit for loss of sight or limb to become payable, the loss was required to have been suffered solely as "a direct and proximate result of diseases contracted after or injuries sustained after the effective date of this policy."

One of the defenses made by appellant was the contention that appellee's loss was the result of a disease which pre-existed the effective date of the policy. After hearing the testimony, the circuit judge, sitting without a jury by stipulation of the parties, made the following findings.

"THE COURT:

I rather think we should pay this policy Mr. Selig under the proof. The boy apparently is blind, they insured him, he was carrying it on for years, accepting the premiums. I realize there are a lots of little technicalities in those policies, there are also lots of technicalities in the taking of a man's money off of him and then when you get ready and he is blind and you say he is blind, admit it, admit the policy says that, you say he isn't I believe. Well, Dr. Glasscock I rather think is a reputable physician, his qualifications were admitted. I don't know how to examine a fellow to tell you that properly about it except to go to doctors. I think he has waived, they waived it, whatever they might have there under the proof and I think it should be paid."

Appellant urges two grounds for reversal. The first is that the undisputed evidence shows that appellee's loss of sight in his right eye was not suffered as a result of a disease contracted or injury sustained after the effective date of the policy, but that it preexisted and manifested itself before the policy became effective.

The second ground is a contention that the court erred in holding that appellant waived the defense of noncoverage for losses suffered as a result of conditions which pre-existed the effective date of the policy. We agree with appellant on both points. We shall discuss them in the order set out.

In attempting to sustain his complaint, appellee offered two witnesses, Dr. Robert Earl Glasscock, an ophthalmologist and otolaryngologist, and appellee's mother. Dr. Glasscock examined appellee November 11, 1966. His examination disclosed that appellee's visual acuity in his eye was such as to indicate industrial, but not medical, blindness. He did not find anything physically wrong with either of appellee's eyes. He felt that the visual loss was connected in origin to appellee's central system, i.e., with whatever was causing a convulsive disorder suffered by appellee and his obvious retardation. Dr. Glasscock took a medical history from appellee's mother. She told him that appellee was cross-eyed in his right eye since he was about five or six years old and that he had had some type of convulsive disorder since that time. Dr. Glasscock stated that such a condition remains more or less stable because the damage causing the condition does not progress. He stated that this condition would stay approximately the same if it existed in 1944 or 1945 when appellee was five or six years of age. He did not believe that either a layman or a doctor could have glanced at appellee in 1944 and said that he was mentally deficient, but stated that, on the basis of the history given by appellee's mother, the condition was diagnosable in 1944 or 1945.

Mrs. Ness, appellee's mother, stated that she advised the agent from whom she took the policy that her son, Ronald, had seizures for which he took mylantin sodium.[1] She said that she told the agent that these

---

[1] She testified that she later learned that this medication was for epilepsy.

sudden seizures had been diagnosed as acute indigestion, and that Ronald would sometimes have convulsions and she would have to get the doctor to give him a shot. She admitted that the first time she saw her son's eyes show a cross was when he was about five or six years of age and asserted that she advised the agent of this. She testified that she first took her son to an eye doctor upon the recommendation of a school nurse. This doctor was identified as Dr. Louise McCammon Henry.

On the written claim submitted for this loss, the nature and cause of appellee's disability was described as epilepsy and the date disability became total was given as "lifetime."

Appellant offered the deposition of Dr. Henry, an ophthalmologist. She testified that she examined appellee on March 21, 1951, when he was thirteen years of age. The medical history for this examination was given by appellee's mother. According to Dr. Henry, the mother stated that her son had convulsions as a baby and that the crossing of his eyes began between the ages of five and six. This doctor diagnosed the condition which affected appellee's vision in his right eye as a muscular defect which generally actively manifests itself in early childhood. It was her opinion, based upon her examination, that this condition existed in appellee from early childhood, that the degree of crossing would have been obvious to her and that, assuming the medical history to be correct, an accurate diagnosis could have been made of his condition when he was five or six years of age.

We find no substantial evidence here to support appellee's claim that his loss of sight is within the coverage of the insurance policy.

Appellee relies upon the cases of *Home Mutual Benefit Association* v. *Mayfield,* 142 Ark. 240, 218 S.W. 371; *State National Life Insurance Co.* v. *Stamper,* 228 Ark. 1128, 312 S.W. 2d 441; *United Insurance Co. of*

*America* v. *Wall,* 233 Ark. 554, 345 S.W. 2d 1927; *American Insurance Co. of Texas* v. *Neal,* 234 Ark. 784, 354 S.W. 2d 741; *Old Equity Life Insurance Co.* v. *Crumby,* 241 Ark. 982, 411 S.W. 2d 292; and *Lincoln Income Life Insurance Company* v. *Milton,* 242 Ark. 124, 412 S.W. 2d 291. These cases establish the proposition that a disease has its inception at the time it manifests itself or becomes active or when it is of such nature that a reasonably accurate diagnosis could have been made before the policy was issued. Even so, we cannot come to any conclusion in this case except that the disease which caused appellee's loss of sight had been sufficiently manifested before the issuance of the policy to cause a diagnosis to have been sought and that it was of such a nature as to have permitted a reasonably accurate diagnosis to have been made with reasonable medical certainty.

It should be noted that the clause in question in *Home Mutual Benefit Association* v. *Mayfield,* supra, was quite different from the one involved here. The clause there required that the loss be from ''disease resulting hereafter.''

The findings of the circuit court here seem to have been based principally upon waiver by appellant, purportedly by reason of the acceptance of the premiums for the policy ever since its issuance. There is also testimony by appellee's mother that the soliciting agent saw appellee both when the application was made for the policy and when the policy was delivered. She also testified that she told the agent all she knew about her son's condition. We find no waiver under the facts in this case. Appellee apparently agrees with us, because he does not argue this point, nor does he rely on waiver for an affirmance.

It is well settled in this state that the doctrines of waiver and estoppel, based upon the conduct or action of the insurer, cannot be used to extend the coverage of an insurance policy to a risk not covered by its terms or expressly excluded therefrom. *Hartford Fire Insurance*

*Co. v. Smith*, 200 Ark. 508, 139 S.W. 2d 411; *Metropolitan Life Insurance Company* v. *Stagg*, 215 Ark. 456, 221 S.W. 2d 29; *Bankers Nat. Ins. Co.* v. *Hemby*, 217 Ark. 749, 233 S.W. 2d 637. This is not a case where a forfeiture is attempted by the insurance company but is a question as to the extent of the coverage of the policy. Consequently, there is no support for a finding of waiver. The result is not changed by reason of the fact that appellant accepted the payment of a premium after this claim was asserted. To have done otherwise would have been inconsistent with the contention made by appellant. Under the terms of the policy, it expires upon the occurrence of any loss covered and the payment of the amount provided by the policy for such a loss. Appellant contended that the loss suffered by appellee was not within the coverage of the policy. Consequently, if it was right in its contention the policy continued in force as to the risks of accidental death, loss of limbs and loss of sight of the left eye.

The judgment is reversed and the cause dismissed.