Ruby BROWN, Individually and as
Executrix of the Estate of Jesse BROWN, Deceased
*v.* CUDIS INSURANCE SOCIETY, INC. and
CUNA MUTUAL INSURANCE SOCIETY

CA 83-436                                    669 S.W.2d 207

Court of Appeals of Arkansas
Division I
Opinion delivered May 23, 1984

*Keith Vaughn, P.A.,* for appellant

*Wright, Lindsey & Jennings,* for appellee.

Donald L. Corbin, Judge. This is an appeal by
appellant Ruby Brown, individually and as executrix of the
estate of Jesse Brown, deceased, from a summary judgment
in favor of CUDIS Insurance Society, Inc., and CUNA
Mutual Insurance Society. We affirm.

On or about April 28, 1982, Jesse Brown, appellant's deceased husband, borrowed money from Bakem Credit Union to purchase a 1982 Oldsmobile. He executed two promissory notes totaling $10,781.85. When these loans were made, there was in force a group creditors disability insurance policy issued by CUDIS Insurance Society to Bakem Credit Union. Jesse Brown applied for group credit disability insurance for both loans. The insurance policy provided that if the disability for which benefits were claimed began within six months after the date the insurance became effective and for which the member had received medical treatment within six months before the date of insurance, there would be no coverage. Jesse Brown became disabled on May 10 or 11, 1982. His disability resulted directly or indirectly from or was contributed to by chronic myelocytic leukemia. The record reflects that he had received medical advice, consultation, and treatment for that illness during the six months before the effective date of the insurance.

When the loans were made, there also was in force a group credit life insurance policy issued by CUNA Mutual Insurance Society to Bakem Credit Union. That policy provided that no benefit would be provided for death if a material contributing cause of death was a sickness which became manifest prior to the time insurance coverage became effective and if the death occurred within six months after the effective date of insurance. Jesse Brown died on October 25, 1982, which was within six months of the time the insurance became effective on April 28, 1982. Death occurred from chronic myelocytic leukemia, which was manifested in Jesse Brown before April 28, 1982, the effective date of the insurance.

Appellant Ruby Brown made timely application for both the disability insurance and the credit life insurance through Arkansas Central Credit Union who had succeeded Bakem Credit Union. Both claims were denied by appellees citing Mr. Brown's preexisting condition.

After Arkansas Central Credit Union repossessed the automobile, appellant brought suit to recover the disability

and credit life proceeds to apply them against the indebtedness due Arkansas Central Credit Union. The suit claimed the appellees were estopped, as the insurer accepted the first premium payment made by Jesse Brown subsequent to his total disability.

The issue on appeal is whether the trial court erred in granting summary judgment on the basis that the doctrines of waiver and estoppel do not apply in this case because the credit union was not an agent for the two insurers.

Appellees moved for summary judgment which appellant did not respond to in writing. A hearing was held and the trial court granted appellees' motion for summary judgment. At the hearing, appellant argued that the exclusions from coverage in the two policies were waived by the insurance companies or that the insurance companies were estopped from relying on those exclusions. Appellant alleged that the claims of waiver and estoppel were based on the actions of the credit union. Appellant claimed that the credit union knew of Jesse Brown's leukemia when it made the loans that were the subject of this lawsuit and filled out the applications for credit life and credit disability insurance. Appellant contended that the credit union acted as agent for appellee insurance companies and that the credit union's knowledge of the leukemia should be imputed to appellee insurance companies.

Mr. Brown became totally disabled before the first payment on either loan was due. An attorney employed by Mr. Brown submitted payments to the credit union with a letter in which he stated that Mr. Brown could not have been aware of his impending disability when he obtained disability insurance and in which he stated that the first payments on the loan were being submitted to negate any possible defense by the insurance company.

Appellant admitted that the credit union, not the credit union member, Mr. Brown, was the insured under the policies. The policies provided insurance to the credit union if its member was unable to repay loans made by the credit union because of total disability under the terms of one

policy or death under the terms of the other policy.

Appellant admitted in response to requests for admissions that Jesse Brown's disability resulted from or was contributed to by the leukemia; that he became totally disabled before June 30, 1982; and that he had received medical treatment for the leukemia during the six months before April 28, 1982, the effective date of the insurance policies.

The trial court rejected the application of the doctrines of waiver and estoppel by adopting as more persuasive the rule that as a matter of law the credit union was not an agent for appellee insurance companies. It relied upon *Sadtler* v. *John Hancock Mutual Life Ins. Co.*, 291 A.2d 500 (1972), in its decision. The trial court believed that it would be unfair to appellees to adopt the opposite rule since the credit union had a direct economic interest in having the policies in force. Also, the credit union would be able to bind appellee insurance companies to payment of the policies by waiving requirements under the policy or committing acts that would estop appellee insurance companies from denying coverage. We reject the rule adopted by the trial court because we have applicable Arkansas law on the subject.

The sole argument presented by appellant in her brief is that there was a dispute about the facts and that the facts could have supported a finding that the credit union was the agent of appellee insurance companies.

We agree with appellees that the doctrines of waiver or estoppel cannot be invoked to extend coverage and thereby bring into existence a contract not made by the parties. This principle of law is best illustrated in the case of *Life & Casualty Ins. Co. of Tenn.* v. *Nicholson*, 246 Ark. 570, 439 S.W.2d 648 (1969). In *Nicholson, supra,* a mother purchased a policy to cover her son for death or loss of sight or limb. The policy provided coverage only for losses resulting from diseases contracted after the effective date of the policy. The boy lost the sight in one eye due to a condition in existence before the policy was purchased. She successfully argued at the trial level that since the soliciting agent knew about her

son's condition when the policy was purchased, there was a waiver of the condition because premiums were accepted. The Arkansas Supreme Court reversed and denied the claim, stating, "We find no waiver under the facts in this case . . . It is well settled in this state that the doctrines of waiver and estoppel, based upon the conduct or action of the insurer, cannot be used to extend the coverage of an insurance policy to a risk not covered by its terms or expressly excluded therefrom."

The most recent case in which this doctrine was applied is *Peoples Protective Life Ins.* v. *Smith,* 257 Ark. 76, 514 S.W.2d 400 (1974). Clarence Smith was an employee of Moore Ford. He became totally disabled on June 18, 1970, and died on March 4, 1972. For many years Mid-West National Life Insurance Company provided group life and health insurance to the employees of Moore Ford. That policy extended through the end of 1970, by which time Clarence Smith had been totally disabled for a number of months. He never worked as a full-time employee at Moore Ford after June 18, 1970. Peoples Protective Life, the successor of Mid-West, issued a new group life and health insurance program to the Moore Ford employees on January 1, 1971. It provided that only full-time employees were eligible for coverage. Smith never worked for Moore Ford while the Peoples policy was in force. He paid premiums on the policy to Moore Ford, which remitted the premiums to Peoples Protective as if Smith was an employee. Moore Ford also listed him on the reports to Peoples Protective as a full-time employee. The circuit judge held that there was coverage under the group life policy for Smith's death.

In reversing, the Arkansas Supreme Court held first that there was no coverage for the loss because Smith never qualified for coverage since he was never a full-time worker. The Court also pointed out that Smith's widow, who was the beneficiary of the policy, had the burden of proving coverage. The Court also held that there was no waiver or estoppel based on the fact that Smith had paid premiums from the time the policy went into effect until his death and the fact that Smith had made several claims for medical payments under the policy, which claims allegedly alerted

the company to his terminal cancer. The Court held that the doctrines of waiver and estoppel could not be invoked to extend coverage and thereby bring into existence a contract not made by the parties. It quoted extensively from Couch on Insurance in part as follows:

> The doctrine of waiver or estoppel cannot be given the effect of enlarging or extending the coverage as defined in the contract, nor can it create a contract of insurance, since a cause of action cannot be based on a waiver.

> The doctrine of waiver or estoppel, based upon the conduct or action of the insurer, is not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom, and the application of the doctrine in this respect is to be distinguished from the waiver of, or estoppel to deny, grounds of forfeiture. . .

> A cause of action cannot arise on the theory of estoppel. . .

There is another line of cases, which, at first glance would lead us to a different result. *Home Mutual Fire Ins. Co.* v. *Riley,* 252 Ark. 750, 480 S.W.2d 957 (1972), is representative of this divergent line of cases.

Dr. Riley owned a rent house next door to his clinic. Home Mutual insured the house against loss by fire. The policy contained a standard provision that there would be no liability for loss if the described property remained unoccupied for a period beyond thirty days. The house burned thirty-four days after being vacated on May 29, 1970.

Home Mutual Fire Insurance Company denied liability for the loss of the building owed by Dr. Riley under the policy by virtue of the nonoccupancy clause. Dr. Riley argued that this provision was waived. Dr. Riley was awarded judgment on the grounds of waiver and estoppel. The Supreme Court affirmed, and quoted from a previous decision as follows:

The doctrine is firmly established by the highest courts in this country, and approved by us in numerous cases, that 'forfeitures are not favored in law,' and that 'courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture, or an agreement to do so, on which the party has relied and acted. Any agreement, declaration or course of action on the part of an insurance company which leads a party insured honestly to believe that, by conformity thereto, a forfeiture of his policy will not be incurred, followed by due conformity on his part, will estop, and ought to estop, the company from insisting on a forfeiture, though it might be claimed under the express terms of the contract.'

One key evidentiary fact was that the agent, Dessie Pitts, was a general agent who had authority to bind the company. She told Dr. Riley, "that he had insurance on the building, period, but that they denied it on the equipment." This case did not turn on any single act standing alone but on the totality of the activities which included the knowledge of the company of the unoccupancy of the building, the agent's ability to bind the company; the nonremittance of any prepaid premiums and the course of action on the part of the insurer, which led Dr. Riley to honestly believe that, by his conformity thereto, a forfeiture of his policy would not occur.

A careful reading of *Nicholson* and *Riley, supra,* leads us to the conclusion that the cases are distinguishable and that *Nicholson* is controlling in the case at bar. Here, a forfeiture was not attempted by appellee insurance companies as was the case in *Riley, supra.* The question here was the extent of the coverage of the policies. It is clear that appellee insurance companies refused to extend their coverage. The record also reveals that appellees did not have any direct contact with the insured as was the case in *Riley, supra.*

It is well settled that summary judgment is an extreme remedy and should be granted only in the absence of a genuine issue as to a material fact remaining to be decided.

*Chick* v. *Rebsamen Insurance,* 8 Ark. App. 157, 649 S.W.2d 196 (1983). Outside of the pleadings, there is nothing in the record here to indicate a remaining genuine material issue of fact. Appellees filed a written motion for summary judgment to which appellant did not respond in writing. The hearing on the motion for summary judgment was not recorded and no additional evidence was presented. In her response to Requests for Admissions, appellant admitted that Jesse Brown's disability resulted from or was contributed to by leukemia, that Jesse Brown became totally disabled before June 30, 1982, (3 days before the 6 month exclusion ended), and that Jesse Brown had received medical treatment for leukemia during the six months before April 28, 1982, the effective date of the insurance policies. Appellant also admitted in her response to Request for Admissions that the six month exclusionary clause was in the policy. See, also, *Wilkinson* v. *Amos Enderlin Contr. Co.,* 7 Ark. App. 56, 644 S.W.2d 313 (1982). Appellees also introduced the policy that contained provisions that the credit union was not their agent.

In view of the pleadings, the exhibits which included the contracts of insurance and appellant's responses to Requests for Admission, we cannot say that the trial court erred in granting summary judgment in favor of appellees on the basis that waiver and estoppel did not apply.

Affirmed.

MAYFIELD, C.J., and GLAZE, J., agree.