CAMPBELL & COMPANY *v.* UTICA MUTUAL INSURANCE COMPANY

CA 90-492                                                820 S.W.2d 284

Court of Appeals of Arkansas
En Banc
Opinion delivered November 27, 1991

144

*Laser, Sharp, Mayes, Wilson, Bufford and Watts, P.A.* by: *Dan F. Bufford* and *Brian Allen Brown*, for appellant.

*Davidson, Horne, & Hollingsworth*, by: *Allan W. Horne* and *Mark H. Allison*, for appellee.

ELIZABETH W. DANIELSON, Judge. In June of 1989 appellant Campbell & Company obtained a default judgment against Bloomburg Insurance Agency based on Bloomburg's negligent failure to insure. Appellant then sued appellee Utica Mutual Insurance Company pursuant to an errors and omissions policy appellee had issued to Bloomburg. Appellee moved for summary judgment based on the facts that no claim was made against the insured and no written notice was given to appellee during the policy period, both of which were required under the terms of the policy. Appellant contends on appeal that the trial court erred in granting the motion for summary judgment. We affirm.

Our summary judgment procedure is designed to prevent unnecessary trials where the record shows there is no genuine issue of fact to be litigated. *Krantz* v. *Mills*, 240 Ark. 872, 402 S.W.2d 661 (1966). Summary judgment is an extreme remedy, and on appeal from the granting of a motion for summary

judgment, we review the evidence in the light most favorable to the party resisting the motion. *Moeller* v. *Theis Realty, Inc.*, 13 Ark. App. 266, 683 S.W.2d 239 (1985). The appellee has the burden of proving that even though the facts might be in dispute, reasonable minds could not differ as to the conclusion to be drawn from them. *Id.*

In March of 1986 appellant was asked to procure an insurance policy to cover a piece of logging equipment. Appellant in turn went to Bloomburg, who gave an oral binder to place coverage with one of its authorized companies and accepted the premium.

The insured property was destroyed in September of 1986 and the loss was reported to Bloomburg. Although Bloomburg retained an adjuster and purported to be investigating the claim, it was later discovered that Bloomburg had failed to obtain the coverage. Appellant ultimately paid $40,000 to settle the claim and subsequently received a $40,000 default judgment against Bloomburg.

At the time of the loss of the equipment, Bloomburg had an errors and omissions policy issued by appellee. Prior to the settlement of the claim and the subsequent default judgment against Bloomburg, appellant contacted appellee about the claim, demanding that appellee undertake the defense of Bloomburg. Appellee denied coverage and refused to defend, maintaining that the conditions precedent to its liability under the policy had not been met. Appellant was awarded a default judgment against Bloomburg, then pursued the claim directly against appellee for payment of the judgment.

The errors and omissions policy issued to Bloomburg by appellee covered the period from April 7, 1986 to April 7, 1987. The policy was a "claims-made" policy, which provides coverage only if a claim is presented during the policy period, in contrast to an "occurrence" policy, which provides coverage if the event insured against takes place within the policy period, regardless of when the claim is presented. The policy issued to Bloomburg provides, in pertinent part, as follows:

> [The insurer agrees] to pay on behalf of the insured all sums which the insured shall become legally obligated to

> pay as money damages because of any *claim or claims first made against the Insured during the policy period*, arising out of any negligent act, error or omission, occurring subsequent to the retroactive date. . .
>
> A claim is first made during the policy period . . . if during the policy period . . . the insured shall have knowledge or become aware of any negligent act, error or omission which could reasonably be expected to give rise to a claim under this policy and *shall during the policy period . . . give written notice thereof to the company.*

(Emphasis supplied.) Coverage is therefore provided under this policy when two conditions are met: first, a claim based on the insured's negligent acts must be made against the insured during the policy period, and second, written notice of the claim must be given to Utica during the policy period. Although the loss occurred during the policy period and Bloomburg was made aware of it, no claim based on Bloomburg's negligence was made against Bloomburg during this time. The first notice appellee received regarding the claim was in May of 1988, more than a year after the expiration of the policy. Because no claim was made against the insured and no written notice was given to appellee during the policy period, the trial court granted appellee's motion for summary judgment.

Campbell's first argument on appeal is that the trial court erred in granting summary judgment because appellee had actual notice during the policy period of another claim against Bloomburg and that Bloomburg's owner had disappeared. Appellant contends that because of this knowledge, appellee had notice that additional claims would be forthcoming. The basis of this contention is a report filed on April 8, 1987, with appellee by its employee, Mr. Trzcinski. The report revealed that in March of 1987, appellee was informed of a lawsuit against Bloomburg by D. E. Thompson, a resident of Georgia. Thompson had applied for property insurance through a Georgia agency, which had in turn orally bound the risk with Bloomburg. After the property was destroyed, it was discovered that Bloomburg had taken the premium but never obtained the coverage. After attempting to contact Bloomburg and finding the telephone had been disconnected, Mr. Trzcinski stated in his report, "I can only deduce that

there is a possibility that this insured (Bloomburg) had either some sort of financial problems or simply took premium dollars from clients and/or other agents and never placed the coverage." Appellant contends that this April 8, 1987, report gave appellee actual notice of its claim.

In *Safeco Title Ins.Co.* v. *Gannon*, 774 P.2d 30 (Wash. App. 1989), the Washington Court of Appeals denied coverage under a claims-made policy even though the insurer knew of the event giving rise to the suit. Gannon, who had a claims-made policy with Safeco, notarized a signature that turned out to be a forgery. Gannon's insurance policy was effective from May 20, 1982 to May 20, 1983. On January 20, 1983, an attorney notified Gannon of the forgery and he notified his employer, who had processed the forged deed of trust. Around January 28 Gannon was notified by an agent of Safeco that there was a forgery and that Gannon should see his attorney. Gannon contended on appeal that these facts constituted notice of Safeco's "imminent subrogation claim," but the Washington Court of Appeals held that these facts did not constitute a demand for compensation. Instead, the court said, these were facts and circumstances that later gave rise to Safeco's claim, and, accordingly, "no claim was made by [appellant Gannon against Safeco] within the policy period and appellant was thus not entitled to receive coverage under the claims made clause." 774 P.2d 30 at 33.

As appellee points out, Mr. Trzcinski's report makes absolutely no reference to appellant or the loss involved in this case, and dealt with an entirely separate event involving an insured and insurance agent in Georgia. The existence of appellant's claim could not be ascertained from the report. Mr. Trzcinski's deduction that Bloomburg was in financial trouble and may have taken premiums from clients or agents in no way constitutes notice that appellant had a claim against Bloomburg. Mere suspicion that something is awry cannot be said to provide notice of a particular claim involving specific parties of which the insurer has no knowledge. Because the report dealt with an entirely separate event from the instant claim and the existence of this claim could not be ascertained from the information in the report, we hold that the report did not constitute actual notice of appellant's claim.

Appellant contends that the adequacy of notice is a question for the jury and cites cases in which the adequacy of the notice question was properly presented to the jury. The question here, however, is not whether the notice given was adequate, but whether the knowledge of an unrelated claim constituted notice at all under the terms of the policy. In *Reynolds* v. *New York Life Ins. Co.*, 202 Ark. 1013, 154 S.W.2d 817 (1941), the supreme court stated that it is the function of the court to construe insurance policies in litigation, ascertain their meaning, and give effect thereto. The construction and legal effect of a written contract are to be determined by the court as a question of law except where the meaning of the language depends upon disputed extrinsic evidence. *Duvall* v. *Massachusetts Indem. & Life Ins. Co.*, 295 Ark. 412, 748 S.W.2d 650 (1988). The information in Mr. Trzcinski's report did not constitute notice to appellee as required by the policy and the trial court did not err in granting summary judgment.

Appellant's second contention is that the trial court erred in granting summary judgment in favor of appellee in that Bloomburg had concealed the loss and intentionally failed to notify appellee of the claims during the policy period, and that the refusal of an insured to notify its carrier should not deprive the innocent injured party of recovery. In *Southern Farm Bur. Cas. Co.* v. *Jackson*, 262 Ark. 152, 555 S.W.2d 4 (1977), the court reversed a decision in favor of the injured parties, stating that since the injured parties' rights were no greater than the insured's and the insured could not enforce the liability policy against the defense of failure to cooperate, the trial court should have entered a verdict in favor of the insurer; the injured person stands in the shoes of the insured. 262 Ark. 152 at 157-158. Although *Jackson* involved an automobile liability policy, we believe the same principle applies under the circumstances of this case. Since Bloomburg could not enforce the policy against the defense that no claim was made within the policy limitations, and appellant's rights were no greater than Bloomburg's, the trial court did not err in granting summary judgment in favor of appellee.

As part of its second argument on appeal appellant also contends that appellee had waived its right to raise the lack of timely notice because in a June 14, 1988, letter to Bloomburg, appellee disclaimed coverage for the reason that "the date of the

first notice of claim made against you in this instance case . . . is subsequent to your expiration date of April 7, 1987." Appellant argues that Bloomburg first had notice of the loss within a few days of its occurrence, not in January of 1988 as stated in appellee's letter, and that where an insurance company disclaims coverage on one ground or set of grounds, it has waived any other grounds of which it had knowledge at the time. We agree with appellee's statement that this argument misses the principal issue in this case, which is not whether there is a defense to appellee's liability that appellee waived or is estopped from asserting, but whether there was any coverage under the policy for appellant's claim in the first place. This court has said that "it is well settled in this state that the doctrines of waiver and estoppel, based upon the conduct or action of the insurer, cannot be used to extend the coverage of an insurance policy to a risk not covered by its terms or expressly excluded therefrom." *Brown* v. *Cudis Ins. Society, Inc.*, 11 Ark. App. 255, 669 S.W.2d 207 (1984), citing *Life & Cas. Ins. Co.* v. *Nicholson*, 246 Ark. 570, 439 S.W.2d 648 (1969).

Appellant's third point on appeal is that the trial court erred in granting summary judgment because there was no showing that appellee was prejudiced by the failure to receive timely notice. The position that an insurer must show it was prejudiced by lack of notice in order to escape liability or its duty to defend is based on the reasoning that the purpose of the notice requirement is to give the insurer an opportunity to investigate, so that the insured's rights should not be forfeited unless the insurer shows, for example, that it did not have an opportunity to investigate and was thereby prejudiced. *See* Charles B. Marvel, Annotation, *Modern Status of Rules Requiring Liability Insurer to Show Prejudice to Escape Liability Because of Insured's Failure or Delay in Giving Notice of Accident or Claim, or in Forwarding Suit Papers*, 32 A.L.R. 4th 141 (1984). The notice prejudice rule was "created fundamentally to preserve the insured's coverage in those cases where the lack of notice does not prejudice the insurer." *Safeco Title Ins. Co.* v. *Gannon*, 774 P.2d 30 at 34 (Wash. App. 1989).

We are aware of no Arkansas law on the issue of whether the notice/prejudice rule applies to claims-made policies; our discussions on whether prejudice must be shown have dealt with occurrence-type policies. *See*, e.g., *American Fidelity & Cas. Co.*

v. *Northeast Arkansas Bus Lines, Inc.*, 201 Ark. 622, 146 S.W.2d 165 (1941); *Hope Spoke Co.* v. *Maryland Cas. Co.*, 102 Ark. 1, 143 S.W. 85 (1912); *American General Life Ins.* v. *First American Nat'l Bank*, 19 Ark. App. 13, 716 S.W.2d 205 (1986). The federal district court has reviewed Arkansas case law and determined that where a notice requirement is a condition precedent, the insurer is not required to show that he is injured or prejudiced by the failure of the insured to provide the required notice. *Hartford Accident and Indemnity Co.* v. *Loyd*, 173 F. Supp. 7 at 11 (W.D. Ark. 1959); *M.F.A. Mutual Ins. Co.* v. *Mullin*, 156 F. Supp. 445 at 460 (W.D. Ark. 1957).

We agree with the court in *Safeco* that "[w]hile there are sound reasons for applying the notice prejudice rule to the typical notice provision in an occurrence policy, those reasons do not apply with equal force to the notice provision [in a claims-made policy]." 774 P.2d 30 at 34. A claims-made policy is designed so that the insurer can more accurately predict the limits of its exposure and the premium needed to cover the risk undertaken. The benefit to the insured is a lower premium than would be necessary in an occurrence policy. 7A J. Appleman, *Insurance Law and Practice* § 4504.01 (Supp. 1990). Notice is critical to the insurer in a claims-made policy; it not only gives the insurer an opportunity to investigate, it defines the very risk the insurer contracted to undertake. To allow an extension of reporting time where the insurer failed to demonstrate prejudice in a claims-made policy would extend the coverage the parties contracted for and, in effect, rewrite the contract between the parties. *See Safeco*, 774 P.2d 30 at 34. Because the notice requirement defines the coverage contracted for in a claims-made policy and is a condition precedent to coverage, we hold that the insurer is not required to demonstrate prejudice caused by the untimely filing of notice under a claims-made policy such as the one in this case.

Since there was no claim made against Bloomburg and no notice given to appellee during the time Bloomburg's errors and omissions policy was in effect, appellant's claim was not covered by the policy and the trial court properly granted summary judgment in favor of appellee.

Affirmed.

ROGERS, J., concurs.

COOPER and MAYFIELD, JJ., dissent.

MELVIN MAYFIELD, Judge, dissenting. I cannot agree to affirm the summary judgment granted by the trial court in this case. The judgment was granted upon matters of record which include the pleadings, depositions, answers to interrogatories and admissions, and affidavits. These matters include a number of exhibits which are also in the record.

Summary judgment is an extreme remedy and any proof submitted must be viewed most favorably to the party resisting the motion, and any doubts and inferences must be resolved against the moving party. *Leigh Winham, Inc.* v. *Reynolds Ins. Agency*, 279 Ark. 317, 651 S.W.2d 74 (1983). In *Baggett* v. *Bradley County Farmers Coop.*, 302 Ark. 401, 789 S.W.2d 733 (1990), the court said that "the object of a summary judgment is not to try the issue but to determine if there are issues to be tried," and "if there is any doubt whatever, it should be denied." The court quoting from a previous case, also said:

> Summary judgment is not proper where evidence, although in no material dispute as to actuality, reveals aspects from which inconsistent hypotheses might reasonably be drawn and reasonable men might differ.

302 Ark. at 403.

There is no dispute about the essential facts in this case. The appellant is an insurance agency in Arkansas. A customer of that agency, Carlton Dorey, applied to appellant for insurance on a piece of logging equipment referred to as a "loader." Appellant obtained an oral quotation and binder for the coverage from an insurance agency in Texas. Appellant forwarded a check to the Texas agency, Bloomburg Insurance Agency, and some six months later the loader was destroyed by fire. The loss was promptly reported to Bloomburg and it retained an adjuster and purported to be acting to investigate and settle the claim, but it was ultimately learned that Bloomburg had negligently failed to obtain insurance on the loader and there was, in fact, no coverage for Dorey's loss.

The majority opinion holds that the errors and omissions

policy issued by the appellee to Bloomburg did not cover Bloomburg's negligence because the policy is a "claims-made" policy, and no coverage exists unless the claim is made within the period of time provided in the policy. The majority agrees with the appellee that this is a condition of coverage and that this policy is different from an "occurrence" policy which provides coverage for loss within the policy period.

The policy issued by appellee provides that "upon any insured becoming aware of any negligent act, error or omission which would reasonably be expected to give rise to a claim against any insured, written notice with all available particulars shall be given by or for the insured to the [appellee] or its authorized agent." The policy also provides that this notice must be given during the policy period. The period of the policy issued by the appellee in this case was April 7, 1986, to April 7, 1987. Although Dorey's loss occurred during the period of Bloomburg's errors and omissions policy and it is undisputed that the loss was reported to Bloomburg during the period of that policy, the appellee contends it is not liable because Bloomburg's failure to secure the insurance coverage for Dorey was not reported to appellee during the period of the policy it issued to Bloomburg. My·view is that the appellee's motion for summary judgment should not have been granted because (1) there is a genuine issue of fact as to whether Bloomburg's error or omission was reported to appellee within the policy period, and (2) under the evidence in this case, public policy considerations should prevent appellee from avoiding liability on its policy unless it was unfairly prejudiced by failing to receive notice, within a reasonable period of time, of the negligent acts, errors, or omissions of its insured.

The majority opinion recognizes that the record contains a report to appellee from its employee, Walter Trzcinski, which states that in March of 1987 a letter was forwarded to him by a claimant named D.E. Thompson who said that Bloomburg was supposed to obtain a policy for Thompson but that Bloomburg cashed the premium check and never placed the insurance. The report also said that attempts to reach Bloomburg had failed because its telephones had been disconnected or were not in service. Mr. Trzcinski's report concluded: "I can only deduce that there is a possibility that this insured had either some sort of financial problems or simply took premium dollars from clients

and/or other agents and never placed the coverage." This report was dated April 8, 1987. It refers to information forwarded to Trzcinski on March 20, 1987. Appellee's policy period ran from April 7, 1986, to April 7, 1987. Thus, it is clear that this employee of appellee received notice within the policy period of a "negligent act, error or omission" on the part of Bloomburg "which would reasonably be expected to give rise to a claim against" appellee's insured Bloomburg. And there is surely, at least, a genuine issue of fact as to whether Trzcinski was appellee's "authorized agent" to receive this information.

The majority opinion, however, cites the case of *Safeco Title Ins. Co.* v. *Gannon*, 774 P.2d 30 (Wash. App. 1989), as authority for holding that Trzcinski's "mere suspicion that something was awry" was not sufficient notice to appellee of the existence of "appellant's claim." Now the appellant is Campbell & Company, the Arkansas insurance agency who attempted to place insurance coverage for Dorey with the Bloomburg agency in Texas. When Dorey sued Campbell and Bloomburg, the suit was settled by Campbell who cross-complained against Bloomburg and obtained a judgment against it for the amount of the settlement with Dorey. The appellant, Campbell, then brought this present suit against the appellee under Campbell's right to be subrogated to Bloomburg's rights against appellee. The appellee's errors and omissions policy which was issued to Bloomburg required notice to appellee of Bloomburg's claim. However, the insuring agreement of appellee's policy states that it will pay all sums the insured (Bloomburg) becomes legally obligated to pay for "any claim or claims first made against the Insured during the policy period, arising out of any negligent act, error or omission . . . in the conduct of Insured's business." And the policy also provides that "a claim is first made" if the insured "shall during the policy period" give written notice of "any negligent act, error or omission which could reasonably be expected to give rise to a claim under the policy."

Therefore, I strongly disagree with the majority opinion's statement that "mere suspicion that something was awry" was not sufficient to constitute notice of a claim as required by the policy issued to Bloomburg by the appellee. In my opinion, the information received by appellee's employee, Trzcinski, was more than enough to cause a "mere suspicion" that something

was wrong at Bloomburg's. It was exactly the information the appellee's policy called for—"any negligent act, error or omission which could reasonably be expected to give rise to a claim under the policy." The majority opinion also states that "it is the function of the court to construe insurance policies in litigation, ascertain their meaning, and give effect thereto." But what is overlooked is the following rule:

> It is also established law in our state that provisions contained in a policy of insurance must be construed most strongly against the insurance company which prepared it, and if a reasonable construction may be given to the contract which would justify recovery, it is the duty of the court to do so.

*Home Indemnity Co.* v. *City of Marianna*, 297 Ark. 268, 272, 761 S.W.2d 171 (1988). *See also* the case of *American Home Assurance Co.* v. *Ingeneri and Foss*, 479 A.2d 897 (Me. 1984), where the insurance company had issued a claims-made policy to Ingeneri. The court said:

> It is undisputed that Ingeneri did not himself give written notice as required by the policy; however, Foss's new counsel did give written notice of the suit to the agent of the insurer by letter dated July 17, 1980.

> . . . .

> . . . By virtue of the July 17 letter from Foss's new counsel, plaintiff had ample opportunity to investigate the claim and to protect its interests prior to the entry of the default judgment. The evidence does not support the Superior Court's finding that plaintiff was prejudiced by Ingeneri's failure to give notice. In the absence of prejudice to the insurer, we hold that notice by a third party constituted sufficient compliance with the provisions of the policy. *See generally* Couch on Insurance, *supra*, at § 49:101.

*Id*. at 902. Under the circumstances of the present case, I think the issue regarding the sufficiency of the notice of the claim should not have been decided by summary judgment.

I also think that public policy considerations, under the circumstances of this case, should prevent the appellee from

avoiding liability on its policy unless it is established that the appellee was unfairly prejudiced by failing to receive notice, within a reasonable period of time, of the negligent acts, errors, or omissions of its insured. I am aware that is not as yet the majority view in this country. Perhaps typical of the majority view is *Esmailzadeh* v. *Johnson and Speakman*, 869 F.2d 422 (8th Cir. 1989), where the court affirmed a Minnesota District Court decision holding that an insurance company was not liable on a claims-made professional-liability policy because the insured law firm did not report the claim against it to the insurance company within the policy period. Finding no convincing reason to disturb the district court's holding that the policy provisions did not violate Minnesota public policy, the appellate court said:

> As a result, plaintiffs, initially injured by their law firm's professional neglect, are again injured by the same firm's negligent failure to give notice to its insurance company. This is a grievous wrong, but it is not one which the insurance company agreed to protect against. Under this kind of policy, the company clearly disclaims the risk of failure on the part of its insured to give it timely notice.

869 F.2d at 425.

The obvious harshness of such a result has caused some courts to soften the application of the claims-made policy. This is not different from what has been occurring for many years in other areas of insurance law. A law review article written by Professor Clarence Morris, *Waiver and Estoppel in Insurance Policy Litigation*, 105 U. Pa. L. Rev. 925 (1957), states:

> Indexes to the great nineteenth century insurance texts do not list waiver and estoppel. But times had changed. The 1951 third edition of Vance on Insurance enfolds an excellent and important seventy-six page "Waiver & Estoppel" chapter—about a fourteenth of the book's bulk. What has fostered this growth in the last hundred years? My thesis is that waiver and estoppel are two of several guises that cloak the courts' part in changing insurance from a service safely bought only by sophisti- cated businessmen to a commodity bought with confidence by untrained consumers. Judges, at the urging of policy- holders' advocates, have used waiver and estoppel to

convert insurance from a custom-made document designed in part by knowing buyers to a brand-name staple sold over the counter by mine-run salesmen to the trusting public.

A recent treatise on insurance law has observed that the courts have considered thousands of cases in which insureds have sought to assert rights that have conflicted with the terms specified in an insurance policy, and in hundreds of appellate decisions judges have held that the rights of the insureds were at variance with the policy terms. Pointing out that from 1945 to the mid 1960's the appellate courts increasingly sustained variance claims, the treatise states that by 1970 it was possible to discern that several justifications provide a common foundation for a significant portion of what otherwise appeared to be unrelated judicial decisions in favor of claimants. It is then stated:

The determinations were implicitly, and occasionally explicitly, predicated on one or more of the following three principles:

An insurer will be denied unconscionable advantages in an insurance transaction.

An insurance contract embodies an implied covenant of good faith and fair dealing.

The reasonable expectations of applicants, insureds, and in some instances third party beneficiaries, should be protected.

R. Feeton & A. Widiss, *Insurance Law* 614-15 (1988). This treatise also notes that the judicial decisions of recent decades have sustained a large number of variance claims on the ground that provisions of the insurance policy, if literally enforced, would conflict with public policy. *Id.* at 646-47. The case of *Sparks* v. *St. Paul Ins. Co.*, 495 P.2d 406 (N.J. 1985), is cited as an example of such a holding. This case involved a claims-made legal-malpractice policy which was found to violate the state's public policy because it afforded such minimal protection it did not conform to the objectively reasonable expectations of the insured and the public. The court stated:

Although we held today in *Zuckerman* v. *National Union Fire Ins. Co.*, *supra*, 100 N.J. 304, 495 A.2d 395 (1985), that a "claims-made" policy that fulfills the reasonable expectations of the insured with respect to the scope of coverage is valid and enforceable, the policy at issue here is substantially different from the standard "claims-made" policy.

495 A.2d at 414.

The Arkansas Supreme Court in *Arkansas Blue Cross & Blue Shield* v. *Long*, 303 Ark. 116, 792 S.W.2d 602 (1990), affirmed a trial court's decision that a policy exclusion was against public policy. The exclusion stated that "No benefits are provided for inpatient services where you terminate such inpatient admission against medical advice." The court held this provision would divest an insured of benefits already accrued. The insurer said its purpose was to encourage patients to follow the advice of their physicians and remain hospitalized until fully recovered, but the court said that while the purpose might be worthy, when weighed against the consequences for the insured, the policy provision did not "square with public policy." Even more recently, in *Ferrell* v. *Columbia Mutual Casualty Ins. Co.*, 306 Ark. 533, 816 S.W.2d 593 (1991), the court stated:

Many courts have interpreted "no fault" insurance legislation, *see* Ark. Code Ann. § 23-89-202 (1987), and compulsory motor vehicle acts, *see* Ark. §§ 27-22-101 — 104 (Supp. 1991), as expressing a public policy that one who suffers a loss as the result of an automobile accident shall have a source and means of recovery.

306 Ark. at 537-38. However, in that case the court pointed out that only the insurer and the insured were involved, and the loss involved only the insured's property, so "there is no public policy reason to hold that the insurance company's common law right to rescission has been abrogated." *Id.* at 538.

In the present case the appellee's policy was issued to "Bloomburg Insurance Agency, Inc.," and the appellee points out that Texas statutory law requires that a corporation licensed as an insurance agent must have the ability to pay up to $25,000 for which it might become legally obligated to pay on account of any

claim made against it for any "negligent act, error or omission" of the corporation in the conduct of its business as an insurance agent. One of the statutory ways to prove such ability to pay is "an errors and omissions policy." *See* Tex. Ins. Code § 21.14 (Vernon 1990 Cum. Supp.). Thus, there is a public policy consideration involved in this case. It is obvious that Bloomburg was not inclined to give appellee notice of Bloomburg's failure to secure coverage for Dorey's loader. Therefore, unless Trzcinski's report to the appellee is sufficient to meet the notice provisions of appellee's claims-made policy, the reasonable expectations of the statutory beneficiary (Dorey) will not be protected. Based upon the *Blue Cross* and *Columbia Mutual* cases, *supra*, I would hold that, under the circumstances in this case, public policy considerations will prevent the appellee from avoiding liability unless it can establish that it was unfairly prejudiced by failing to receive notice, within a reasonable period of time, of Bloomburg's negligent acts, errors, or omissions which could have reasonably been expected to give rise to the Bloomburg claim under which recovery is sought in this case.

For reasons discussed above, I would reverse and remand.

COOPER, J., joins in this dissent.