PEOPLES PROTECTIVE LIFE
INSURANCE Company *v.* Virginia SMITH

73-293                                      514 S.W. 2d 400

Opinion delivered October 7, 1974
[Rehearing denied November 4, 1974.]

*Rose, Nash, Williamson, Carroll & Clay,* by: *Phillip Carroll,* for appellant.

*Matthews, Purtle, Osterloh & Weber,* by: *Gail O. Matthews,* for appellee and cross-appellant Virginia Smith; *Wright, Lindsey & Jennings,* by: *James M. Moody,* for cross-appellant Progressive National Life Ins. Co; *Givens & Buzbee,* by: *John R. Buzbee,* for Moore Ford Co.

JOHN A. FOGLEMAN, Justice. Appellee Virginia Smith is the widow of Clarence C. Smith, who died on March 4, 1972 of cancer which had caused him to be totally disabled after June 18, 1970. Smith had been employed by Moore Ford

Company for a number of years. He was covered by a group life and health insurance policy issued by Mid-West National Life Insurance Company, predecessor of Progressive National Life Insurance Company, covering the employees of Moore Ford Company. On January 1, 1971, a new group policy covering these employees was obtained by Moore Ford Company. This policy, providing certain medical benefits and $6,000 life insurance to employees of Moore Ford was issued by appellant, Peoples Protective Life Insurance Company.

This appeal involves the question whether Clarence C. Smith came within the coverage of a group life and health insurance policy issued by Peoples Protective Life Insurance Company to Moore Ford Company. Appellant contends that the judgment against it should be reversed because:

## I

There was no coverage for Smith under the Peoples Protective policy.

## II

Smith's ineligibility under the group policy was not waived.

Mid-West issued a group health and life insurance policy to Moore and a certificate to Smith, with appellee as beneficiary. When Peoples Protective issued the policy sued on, it also issued a certificate to Smith, with appellee as beneficiary. The Mid-West policy, which lapsed for non-payment of premiums about 20 days after the Peoples Protective policy was issued, contained a provision by which premiums were waived in case of total disability.

The Peoples Protective policy contained the following pertinent provisions:

## DECLARATIONS PAGE 1

2. All Full-Time Employees to be eligible are all active employees less than 65 years of age. Full-Time

employees shall be those who work 30 or more hours a week for the employer.

3. (A) All present Full-Time Employees who have completed 1 month employment on the Effective Date of this Policy shall be eligible immediately; all other Full-Time Employees shall be eligible upon completion of 1 month employment.

## PART I ELIGIBILITY

An Eligible Employee shall be an employee of the Employer and of any subsidiary and any affiliate company who qualifies under Statements 2 and 3 of the Declarations Page for whom benefits are indicated in Statement 6 of the Declarations Page.

## PART II EFFECTIVE DATE OF INSURANCE

*****

If any Eligible Employee is required to contribute toward the premium for all or a part of his insurance as indicated in Statements 7 and 9 of the Declarations Page, each such employee, as a condition to becoming insured for such contributory insurance, shall make written request to the Employer on a form approved by the Company and shall agree thereon to contribute the amount required for the insurance to which he is or may become entitled. The effective date of such insurance for such an Eligible Employee, subject to the further provisions of the Part, shall be as follows:

1. If such request for insurance is made by the employee on or before the date he becomes eligible, the effective date shall be the date he becomes eligible.

2. If such request for insurance is made by the employee within 31 days after he becomes eligible, the effective date shall be the date of his request or

3. If such request for insurance is made by the employee after the end of 31 day period following the date he is eligible or is made after a previous termination of insurance because of failure to make his contribution when due, the employee shall be required to submit evidence of insurability, including good health, satisfactory to the Company and without expense to it. The effective date of his insurance shall be a date designated by the Company after the Company determines the evidence to be satisfactory.

In any case in which the employee is not actively at work on the date his insurance would otherwise become effective, the effective date of his insurance shall be the date of his return to full-time work.

\*\*\*\*\*

## EMPLOYER NOT COMPANY'S AGENT:

The Employer shall in no event be considered the agent of the Insurance Company for any purpose under this Policy.

\*\*\*\*\*

## AMENDMENT AND CHANGES:

No agent is authorized to alter or amend this policy, or to waive any conditions or restrictions herein, or to extend the time for paying a premium. This policy may be amended at any time by mutual agreement between the Employer and the Company without consent of the employees insured, but without prejudice to any loss incurred prior to the date to which premiums have been paid. No person except the President, Vice President, or Secretary, or Assistant Secretary of the Company has authority on behalf of the Company to modify the policy or to waive any of the Company's rights or requirements.

It was shown that, after Smith became disabled, he went to work again in July, 1970, and worked for some five or six weeks, but that he was not working when the Peoples Protective policy was issued or at any time thereafter. Both policies were contributory. As long as Smith worked, his portion of the premiums due Mid-West (later Progressive) was withheld from his pay. Thereafter, Smith paid the full premium to Moore Ford Company and Moore remitted it to its insurance carrier along with the premiums paid on other employees. His name was never stricken from the records of Moore Ford as an active employee. He was reported to appellant by Moore Ford as if he were a full-time employee. In January 1971, when its policy was issued, the certificate issued to Smith by Peoples Protective recited life insurance benefits of $6,000. Appellant paid a claim submitted by Smith for medical expenses when Smith was treated in a hospital after the issuance of its policy.

United Financial Services was an agent for Mid-West and for Peoples Protective. Hale Allen was President of the agency and Scott Goodman was a stockholder and soliciting agent of United Financial Services. United Financial Services received an "override" on all policies written by it for Mid-West. Goodman was paid commissions by United Financial Services. Hale Allen, president of the agency, testified that it had no authority to extend coverage beyond the terms of the policy. Scott Goodman negotiated both the Mid-West and Peoples Protective policies.[1] According to Smith's daughter, Goodman advised the Smith family that a change in insurance carriers was contemplated by Moore Ford, but that, because of the non-cancellable clause in the Mid-West policy, they should never let his name be dropped from the group, and that they should continue to pay the premiums, regardless of benefits or costs.

Sometime prior to the issuance of the Peoples Protective policy to Moore Ford Company, Progressive National had discontinued the writing of health policies and requested a

---

[1]Goodman denied that he had anything to do with the change of carriers or even knew of it until after it had been accomplished. In stating the facts, however, we have drawn all possible inferences and resolved all conflicts favorably to the appellee. Goodman admitted having advised the Smith family when he went to the home to fill out a medical claim form at a time not later than the early fall of 1970, that there were conversion privileges under the Mid-West policy.

change in carriers but had been willing to continue the coverage if Moore desired that it do so. Hale Allen, president of United Financial Services, notified Progressive National of the change in carriers. The death benefits under the earlier policy terminated January 20, 1971, but Smith, who was 62 years of age, was not eligible for extended insurance which would have been available to him had he been under 60. Even though several claims had been filed by Smith under this policy, there had been no waiver of premium, to which Smith would have been entitled upon termination of employment by total disability. This company was never notified that Smith's employment was terminated. He had a privilege of conversion of the life insurance coverage under this policy by applying to Progressive National.

Scott Goodman was aware that Smith had terminal cancer and sometime between June and December 31, 1970 had a conversation with the employee of Moore Ford who kept the company records with regard to claims and premiums on the group insurance policies. According to her, Goodman said that he had told the Smith family to continue the coverage and pay the premium directly to Moore Ford.

There was no evidence that Peoples Protective was ever actually notified of Smith's condition, except by the medical claims submitted to it.

I

The basic premise of the circuit court's holding that there was coverage is that Peoples Protective Insurance Company assumed all coverage previously afforded under the Mid-West contract, and that there was no evidence to the contrary. We respectfully disagree with the learned circuit judge. In the first place, appellee had the burden of proving coverage. *State Farm Fire & Casualty Co. v. Rice,* 241 Ark. 201, 406 S.W. 2d 880; *Southern Farm Bureau Casualty Insurance Co. v. Reed,* 231 Ark. 759, 332 S.W. 2d 615; *Phoenix Assurance Co., Ltd. v. Loetscher,* 215 Ark. 23, 219 S.W. 2d 629; *State Farm Mutual Automobile Insurance Co. v. Belshe,* 195 Ark. 460, 112 S.W. 2d 954; *Atlas Life Insurance Co. v. Bolling,* 186 Ark. 218, 53 S.W. 2d 1, 46 C.J.S. 399, Insurance, § 1316 (6); 19 Couch

on Insurance 2d 639, § 79:344 (1968). Annot: 68 A.L.R. 2d 8, 145; 68 A.L.R. 2d 150, 204 (1959).

The policy clearly defined eligibility for coverage. There is no evidence that Smith ever qualified for coverage under the policy. He could not have qualified for coverage until the date of his return to full-time work—which never came. See *Hargraves v. Continental Assurance Co.*, 247 Ark. 965, 448 S.W. 2d 942. We find no substantial evidence that appellant assumed the Mid-West coverage. It is quite clear that Scott Goodman was a soliciting agent only and that neither United Financial Services nor Hale Allen had the authority to issue policies or extend coverage beyond the terms of the policy. The only evidence on the subject is the testimony of Allen, who categorically stated that all policies sold by United Financial Services were subject to approval by the home office, that all premiums were paid directly to the company and that United Financial Services was an agent which could sell policies and collect commissions on the sale. He said that he had not suggested that his agency had the power to waive contractual terms, or to issue insurance on risks otherwise unacceptable to Peoples Protective or to infer that United Financial Services was a general agency empowered to issue policies. This not only fails to constitute evidence of actual authority, it falls far short of showing any basis for a finding of ostensible authority to bind the company. Certainly, it cannot be said that Scott Goodman had any such authority, even if the ambiguous statement attributed to him could be stretched to carry an inference that coverage of Smith was greater than indicated by the terms of the policy.

The only evidence relating to the assumption by Peoples Progressive of Mid-West obligations was given by Hale Allen in response to this question by appellee's attorney:

Can you tell me whether or not as a matter of practice that when one policy is terminated and another one is taken up that the second company takes up the claims for the first one and continues the coverage?

The response was admitted over appellant's objection, with a statement by the circuit judge that the objection was probably correct. The answer and further testimony on this

score was as follows:

> As a matter of practice, yes, in transfering one group case from one carrier to another you don't expect to have a lapse in coverage.

> *By Mr. Matthews* (claimant's attorney):

> Q. In other words, if you're going to write insurance for a business or something you've got to continue their coverage, is that not right?

> A. Yes sir.

This testimony was not admissible, but it was obviously considered by the circuit judge in reaching his conclusions. Even if admissible it was not substantial evidence of assumption of the risk on Smith. To have been sufficient, the evidence must have shown that the custom was certain, uniform, definite and known. *St. Louis I.M. & S. Ry. Co.* v. *Wirbel*, 108 Ark. 437, 158 S.W. 118. It must have been known to both parties or of such widespread usage that the contract will be presumed to have been made in reference to it. *Ben F. Lewis, Inc.* v. *Collins*, 215 Ark. 172, 219 S.W. 2d 762.

Although evidence of custom may be shown to explain an ambiguity in a contract, it cannot be invoked to defeat, contradict, or vary express terms of the contract. *Farmers Cooperative Association* v. *Phillips*, 243 Ark. 809, 422 S.W. 2d 418; *Arkansas Power & Light Co.* v. *Thompson*, 191 Ark. 171, 83 S.W. 2d 838; *Lindsey* v. *Pierce Petroleum Corporation*, 181 Ark. 841, 28 S.W. 2d 56; *Ozark Badger Co.* v. *Roberts*, 171 Ark. 1105, 287 S.W. 401. *Muse* v. *Eastham*, 141 Ark. 295, 217 S.W. 15. It is not admissible to defeat or vary the plain and unambiguous terms of an insurance contract. *Runyan* v. *Runyan*, 101 Ark. 353, 142 S.W. 519.

Appellee bore the burden of proving that Peoples Protective assumed the obligations of Progressive National on the insurance contract issued by Mid-West, and that burden could not be met by incompetent evidence. *Capital Fire Insurance Co.* v. *J. H. Davis & Son*, 93 Ark. 179, 124 S.W. 520. Appellee did not meet her burden of proof.

## II

The trial court's finding of waiver and estoppel was bas-

ed upon two statements of a claim for medical benefits filed on two forms furnished by appellant. The first claim submitted in February 1972 was rejected and returned because medical bills necessary to support the claim were not attached. On the first form Smith's disability was described as "Cancer-asso-Sarcoma." In a blank opposite the words "First full day unable to work" the response "March, 1970" was written. Thereafter, the second claim form submitted was received by appellant on March 21, 1972, some 17 days after Smith's death. This claim was paid, but the form did not contain any statement at all about the time Smith was first unable to work. There was no suggestion in either form that Smith did not work many full days after March, 1970, or that he was disabled from that date on. As a matter of fact he was not. The undisputed evidence shows that Smith worked during 1970 in June, perhaps July, and possibly even later. It was entirely possible, so far as appellant knew, that Smith had worked at a time which made him eligible.

Although the circuit court recognized that the doctrine of waiver and estoppel cannot be invoked to extend coverage and thereby bring into existence a contract not made by the parties, it held that the payment of a claim for medical benefits brought the doctrine into play. We agree that coverage in a contract of insurance cannot be extended by waiver or estoppel, but not that the payment of medical expenses changed the situation so as to accomplish this result. This proposition is thoroughly treated in 18 Couch on Insurance, 2d 32, 33, §§ 71:39, 71:40, viz:

*****

The doctrine of waiver or estoppel cannot be given the effect of enlarging or extending the coverage as defined in the contract, nor can it create a contract of insurance, since a cause of action cannot be based on a waiver.

The doctrine of waiver or estoppel, based upon the conduct or action of the insurer, is not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom, and the application of the doctrine in this respect is to be distinguished from the waiver of, or estoppel to deny, grounds of forfeiture. That is, conditions going to the coverage or scope of the policy, as distinguished from

those furnishing a ground for forfeiture, may not be waived by implication from conduct or action, without an express agreement to that effect supported by a new consideration.

*****

A cause of action cannot arise on the theory of estoppel. This follows from the fact that an estoppel is defensive in character. It does not create a cause of action. Its function is to preserve rights and not to bring into being a cause of action.

An insurer may waive a defense by his conduct and become estopped to thereafter assert it, but in any case estoppel operates to preserve rights already acquired and to prevent forfeitures or avoidance of duties, but not to create new rights or new causes of action.

Similarly, it has been said that the doctrine of estoppel is protective only and may be invoked as a shield but not as a weapon of offense. It is not effective to create a cause of action and should not be used for gain or profit.

Smith was excluded from coverage by specific language in the policy. In *Hartford Fire Insurance Co.* v. *Smith*, 200 Ark. 508, 139 S.W. 2d 411, we said:

***** The doctrine of waiver and estoppel cannot be asserted to extend coverage under a contract in which it was excluded by specific language. *Miller* v. *Illinois Bankers' Life Ass'n.*, 138 Ark. 442, 212 S.W. 310, 7 A.L.R. 378; *Mutual Ben. Health & Acc. Ass'n.* v. *Moore*, 196 Ark. 667, 119 S.W. 2d 499; *John Hancock Life Insurance Co.* v. *Henson*, [199 Ark. 987], 136 S.W. 2d 684.

A contention similar to those of appellee was considered and rejected in *Bankers National Insurance Co.* v. *Hembey*, 217 Ark. 749, 233 S.W. 2d 637. We said:

It is true that prior to institution of this suit appellant rejected appellee's claim of disability on the exclusive

ground that hernia was an excepted risk, and this exception clause was not specifically pleaded. If Part A, when considered in connection with Part E, merely dealt with a ground of forfeiture, appellant might be held to have waived such forfeiture under the rule that where an insurer denies liability for a loss on one ground, at the time having knowledge of another ground of forfeiture, it cannot thereafter insist on such other ground if the insured has acted on its asserted position and incurred prejudice or expense by bringing suit, or otherwise. 29 Am. Jur., Insurance § 871. But Part A, as related to Part E, sets forth the scope or coverage of the policy and not merely a condition, the breach of which may be a ground of forfeiture. The rule is that, while a forfeiture of benefits contracted for may be waived, the doctrine of waiver or estoppel cannot be invoked to extend the coverage and thereby bring into existence a contract not not made by the parties. *Miller* v. *Illinois Bankers' Life Ass'n.*, 138 Ark. 442, 212 S.W. 310; *Hartford Fire Ins. Co.* v. *Smith*, 200 Ark. 508, 139 S.W. 2d 411; 45 C.J.S. Insurance, § 674a. Cases pointing out this well recognized distinction are collected in an annotation in 113 A.L.R. 857. We, therefore, conclude that appellee was not entitled to disability benefits under Part E of the policies.

In *Life & Casualty Insurance Company of Tenn.* v. *Nicholson*, 246 Ark. 570, 439 S.W. 2d 648, we said:

It is well settled in this state that the doctrines of waiver and estoppel, based upon the conduct or action of the insurer, cannot be used to extend the coverage of an insurance policy to a risk not covered by its terms or expressly excluded therefrom. *Hartford Fire Insurance Co.* v. *Smith*, 200 Ark. 508, 139 S.W. 2d 411; *Metropolitan Life Insurance Company* v. *Stagg*, 215 Ark. 456, 221 S.W. 2d 29; *Bankers National Insurance Co.* v. *Hemby*, 217 Ark. 749, 233 S.W. 2d 637. This is not a case where forfeiture is attempted by the insurance company but is a question as to the extent of the coverage of the policy. Consequently, there is no support for a finding of waiver.

Later, in *Batesville Insurance & Finance Company* v. *Butler*, 248 Ark. 776, 453 S.W. 2d 709, we made these appropriate

remarks:

Butler's second point on cross-appeal is that U.S.F. & G. should be estopped from denying the coverage in question because of the representations of its agent, the Batesville Insurance & Finance Co., Inc. In making this argument, Butler has shown us no reason to overrule our many decisions holding that the doctrines of waiver and estoppel, based upon conduct or action of an insurer, cannot be used to extend coverage of an insurance policy to a risk not covered by its terms or expressly excluded therefrom. *Life & Casualty Insurance Co.* v. *Nicholson*, 246 Ark. 570, 439 S.W. 2d 648 (1969). Furthermore, the only authority, apparent or otherwise, shown to have been delegated to the agent was to countersign and issue policies and riders on printed forms when the proper premium was paid. This falls far short of apparent authority to extend the risk contained in a printed policy by an oral representation as suggested by cross-appellant.

In view of these authorities, the evidence pertaining to the payments of a claim cannot constitute substantial evidence of coverage, even if it could be said to have any probative force in that regard.

Since there is no substantial evidence to support the judgment holding Peoples Protective liable to appellee, we must reverse that judgment. That part of the case has been fully developed, so it must be dismissed.

Appellee cross-appealed, however, from that part of the judgment dismissing her complaint against Progressive National and Moore Ford Company. No reason for the dismissals is given in the judgment or the court's memorandum opinion. It appears, however, that the basis for this action may have been the finding that Peoples Protective had assumed the coverage formerly afforded Progressive National. Appellee quite frankly states that her cross-appeal is an alternative to an affirmance and that she has been unable to determine whether it is proper. Appellee has not stated any basis for holding Moore Ford liable to her. The mere allegation in her complaint that Moore Ford's failure to pay

premiums or transfer coverage is hardly sufficient. Nothing in the evidence shows that Moore Ford failed to pay any premiums or that it had any obligation to transfer coverage.

The basis asserted in appellee's complaint for holding Progressive National Insurance Company liable appears to be the provision for waiver of premiums in case of total disability, coupled with a conversion clause in the policy originally issued by Mid-West and with a clause for extended death benefits. The "extended insurance" provisions were not available to Smith, because he did not become totally disabled before he became 60 years of age. Furthermore, no proof of total disability required by these provisions was ever furnished Progressive National. Smith never applied for conversion of the group life insurance under the Mid-West policy as required by the unambiguous terms of the policy.

Appellee, as cross-appellant, had the burden of demonstrating to this court that the trial court committed error in dismissing the complaint as to cross-appellees. *Holt* v. *Holt*, 253 Ark. 456, 486 S.W. 2d 688; *Poindexter v. Cole*, 239 Ark. 471, 389 S.W. 2d 869. Every judgment of a court of competent jurisdiction is presumed right unless the party aggrieved affirmatively shows it was erroneous. *Clow v. Watson*, 124 Ark. 388, 187 S.W. 175. See also *Embry* v. *Neighbors*, 139 Ark. 313, 213 S.W. 741. Appellee has also failed to meet this burden.

Since we find no basis for liability of either Peoples Protective Insurance Company, Progressive National Insurance Company or Moore Ford Company, and since the case has been fully developed, we must dismiss the action. The judgment is reversed on direct appeal, affirmed on cross-appeal and the cause is dismissed.

JONES and BYRD, JJ., dissent as to the reversal.

HOLT, J., not participating.