**ARKANSAS POWER & LIGHT COMPANY (An Arkansas Corporation and Successor to Arkansas Missouri Power Company), Plaintiff,**

v.

**The HOME INSURANCE COMPANY, Defendant.**

No. LR–C–83–294.

United States District Court, E.D. Arkansas, W.D.

Feb. 11, 1985.

William Dean Overstreet, House, Wallace & Jewell, Little Rock, Ark., for plaintiff.

Tom F. Lovett and James M. Sayes, Little Rock, Ark., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### FINDINGS OF FACT

HENRY WOODS, District Judge.

1. Arkansas Power & Light Company is a corporation organized and existing pursuant to the laws of the State of Arkansas with its principal place of business located in Pulaski County, Arkansas.

2. The Home Insurance Company is a foreign corporation existing by virtue of the laws of the State of New Hampshire and is duly qualified to do business in the State of Arkansas.

3. Arkansas Power & Light Company is the successor in interest to Arkansas Missouri Power Company by reason of a merger of the two corporations occurring on January 1, 1981; and by reason of that merger, Arkansas Power & Light Company is the proper party to institute this action.

4. This action is between citizens of different states and involves an amount in controversy in excess of $10,000.00 exclusive of interest and costs.

5. Arkansas Power & Light Company, as well as Arkansas Missouri Power Company prior to the merger, were wholly owned subsidiaries of Middle South Utilities, Inc.

6. Prior to December 31, 1967, Middle South Utilities did not provide combined system-wide liability insurance coverage for all of its operating subsidiaries. Each subsidiary was responsible for procuring and maintaining its own insurance coverage.

7. On or about December 31, 1967, Middle South Utilities, Inc. chose to combine all of the subsidiaries' liability insurance coverage under one policy.

8. In seeking quotes and bids on the combined insurance coverages, Middle South Utilities, Inc. permitted Rebsamen and Associates, of Little Rock, Arkansas, and Charles Harper, an employee of said corporation, to participate in the bidding process.

9. Through Mr. Harper and Rebsamen Insurance, Middle South Utilities purchased an Excess Liability Insurance Contract with the Home Insurance Company providing combined liability coverages for itself and all of its operating subsidiaries.

10. Upon renewal, the Home Insurance Company issued an excess liability policy, # HEC–4165911, for a policy period of January 1, 1972 through January 1, 1975; this policy provided excess liability coverage in the amount of $4,900,000.00 in excess of a self-insured retention of $100,000.00.

11. In January, 1976 the policy was renewed again by policy number HEC–9006949 for a policy period of January 1, 1976 through January 1, 1977 with a self-insured retention of one million dollars. The excess liability policy was renewed again for January 1, 1977 through January 1, 1978 with the same self-insured retention of $1,000,000.00.

12. Paragraph 7 of the excess liability policies defines "occurrence" as one happening or series of happenings arising out of or caused by one event taking place during the terms of this contract.

13. HEC 4165911 was issued January 1, 1972 and was effective through January 1, 1975. This policy provided for a self-insured retention of $100,000 with coverage extending to claims up to $5,000,000.

14. Middle South Utilities had the option of insuring its own self-insured retention of $100,000 and chose to exercise this option in the case of Arkansas Missouri Power Company, placing $75,000 of that layer of coverage with Houston General Insurance Company.

15. In July of 1974 ARKMO had in its employ an apprentice lineman named Billy Sanders. On July 18, 1974, while in the course of his duties as an ARKMO lineman, Billy Sanders came in contact with an energized 7,200 volt electrical distribution line.

16. On October 1, 1981 Sanders settled his Workers' Compensation Claim by Joint Petition with the Home Insurance Company.

17. On July 14, 1977 Sanders filed a lawsuit in the Circuit Court of Mississippi County, Arkansas against Arkansas Missouri Power Company.

18. In essence, the complaint filed by Sanders alleged that Arkansas Missouri Power Company breached a contract to employ him and pay him his full salary. The complaint prayed for damages as a result of the breach of contract.

19. On March 23, 1979 the Circuit Court of Mississippi County, Arkansas dismissed the complaint filed by Sanders finding that the Arkansas Workers' Compensation Act was not a bar to Sanders' action, but that Sanders' complaint did not state sufficient facts to establish valid consideration for an enforceable contract.

20. Sanders appealed the lower court decision to the Arkansas Court of Appeals, and on January 9, 1980 the Arkansas Court of Appeals reversed the lower court decision. The Appellate Court found sufficient facts pled in the complaint to establish a jury question on the issues of promissory estoppel and detrimental reliance.

21. On April 12, 1982 the action filed by Sanders against Arkansas Missouri Power Company was tried in the Circuit Court of Mississippi County, Arkansas, and the jury returned a verdict for Sanders in the amount of $1,099,043.77.

22. The evidence at the trial in support of the damages incurred by Sanders was based upon the testimony of an economist who calculated the amount of lost wages from the date of the breach of the contract to the date of future retirement.

23. The liability instructions given by the court at the trial were based on contract theory, detrimental reliance and promissory estoppel. The damage instructions given by the court at trial were based upon the value of salary and benefits lost in the past and the value of salary and benefits reasonably certain to be lost in the future.

24. On or about August 2, 1982, the judgment entered in favor of Sanders in the Mississippi County litigation was settled and released in consideration of the payment of the sum of $700,000.00 by Arkansas Power and Light Company as the successor corporation to Arkansas Missouri Power Company.

25. Soon after the complaint was filed by Sanders in July, 1977, a representative of Arkansas Missouri Power Company sent to Rebsamen Insurance Company a copy of the complaint along with the recommendations of Ark-Mo's attorney who was handling the case. Rebsamen Insurance forwarded a copy of that material to Home Insurance Company in August, 1977.

26. In 1978 Rebsamen Insurance forwarded copies of discovery pleadings in the Mississippi County action to Home Insurance Company.

27. In April, 1982 a representative of Rebsamen Insurance told Home Insurance Company that a verdict in the amount of $1,099,043.77 had been entered in the Sanders' case against Arkansas Missouri Power Company.

28. On April 20, 1982 a representative of Arkansas Power & Light Company made the first demand on Home Insurance Company for indemnification pursuant to its excess liability policy in order to satisfy the judgment entered in the Mississippi County litigation.

29. In May, 1982 the Home Insurance Company formally denied coverage under the excess liability insurance policy for the Sanders' judgment since it was based upon damages resulting from a breach of contract.

30. Arkansas Power & Light Company paid $7,995.00 for a supersedeas bond to stay the Sanders' judgment while it was being appealed.

31. Arkansas Power & Light Company paid $2,080.00 for preparation of the transcript of the Mississippi County litigation filed by Sanders.

32. Arkansas Power & Light Company paid the sum of $700,000.00 to Sanders for a release and settlement of the judgment entered in favor of Sanders at the trial of the Mississippi County lawsuit.

33. During the period of time when Middle South Utilities, Inc.'s operating subsidiaries procured their own insurance coverage, Mississippi Power & Light Company was one of those operating subsidiaries procuring its own insurance.

34. While Mississippi Power & Light Company was responsible for its own insurance affairs, it procured a policy of excess liability insurance from the Home Insurance Company. Home Insurance Company Excess Indemnity Policy HEC 9543324 was issued to Mississippi Power & Light Company for the period of June 1, 1963 to June 1, 1966. This policy of insurance insured only Mississippi Power & Light Company and was separate from any insurance acquired by Middle South Utilities, Inc.

35. Following Mr. Sanders' accident, officials at Arkansas Missouri Power Company immediately notified Rebsamen Insurance in Little Rock, Arkansas of the injury for purposes of reporting the Workers' Compensation Claim which would ensue.

36. Mr. Sanders' job injury was accepted as compensable with ARKMO paying the initial $25,000, and with Houston General paying the next $75,000. The amount of Mr. Sanders' Worker's Compensation claim which exceeded $100,000 was paid by the Home Insurance Company pursuant to the terms and conditions of HEC 4165911.

37. Mr. Sanders' Workers' Compensation Claim was ultimately joint petitioned before the Arkansas Workers' Compensation Commission.

38. On or about July 14, 1977, approximately three years after Mr. Sanders' injury, Mr. Sanders filed suit against Arkansas Missouri Power Company in the Circuit Court of Mississippi County, Arkansas.

39. Upon being served with the plaintiff's complaint, Arkansas Missouri Power Company immediately forwarded a copy of the complaint to Rebsamen Insurance in Little Rock, Arkansas. Arkansas Missouri Power Company also began the defense of Sanders' litigation.

40. The Sanders' litigation continued for an extended period of time. During this period, certain pleadings and interrogatories were sent to Rebsamen Insurance in Little Rock for the purpose of advising them of the filing of the lawsuit and notifying them of the potential claim.

41. Although Rebsamen Insurance and the Home Insurance Company were aware of the pendency of the Sanders' litigation, neither the Home nor Rebsamen Insurance ever took any position with regard to coverage.

42. Arkansas Missouri Power Company continued to defend the Sanders' litigation until it was tried in April, 1982.

43. Prior to trial the Sanders' complaint was amended and in its final version contained three distinct theories which can generally be described as follows:

(a) An oral agreement by Mr. McSpadden and Mr. Wafler that ARKMO would pay Mr. Sanders his full salary benefits until such time as he could resume his employment with ARKMO;

(b) That ARKMO's promise, through McSpadden and Wafler, constituted an enforceable contract to pay Mr. Sanders his full salary benefits; and

(c) Alternatively, it was common knowledge and customary practice for ARKMO

to continue to pay employees, such as linemen, their full salary benefits in the event they were injured in the course of their employment and this practice constituted an implied employee benefit program.

44. In April, 1982 the Sanders' litigation went to trial in the Circuit Court of Mississippi County, Arkansas. From a review of the various pleadings, of the trial testimony and various parties and witnesses, the jury instructions and the verdict, it would appear that the thrust of the plaintiff's case was premised upon a breach of an oral contract and promissory estoppel.

45. The policy which the plaintiff urges as coverage for the instant loss, HEC 4165911, was effective January 1, 1972 through January 1, 1975. Under this policy the Home Insurance Company assumed responsibility for Mr. Sanders' Workers' Compensation Claim and under this policy ultimately paid all of Mr. Sanders' Worker's Compensation Claim.

46. HEC 4165911 is a policy of indemnity, that is, a policy under which the Home Insurance Company is obligated to indemnify the assured, Arkansas Power & Light Company, for sums which the insured shall be legally liable to pay and to pay, or by final judgment be adjudged to pay, as damages. This policy does not provide a defense for the insured, but only provides indemnification for legal liability or a judgment returned.

47. However, the policy does provide that the law costs associated with the defense of litigation shall be borne by the assured and the insurer on a pro-rata basis as their financial interest in the litigation may ultimately be determined.

48. Upon learning of the jury's verdict, Arkansas Power & Light (now the defendant by reason of the merger) immediately notified William R. Stringfellow of Rebsamen Insurance of the judgment that had been entered.

49. Mr. Stringfellow promptly notified the Home of the entry of the judgment against ARKMO, at which time he was advised that the company's position was

that no coverage was present for the reason that the damages were awarded for breach of contract and that the policy did not provide coverage for breach of contract.

50. Following the jury's verdict, Arkansas Power & Light filed its Notice of Appeal and made demand upon the Home Insurance Company for coverage. Shortly thereafter Arkansas Power & Light's demand was refused with the Home again announcing its earlier position.

51. Arkansas Power & Light continued to process the appeal, and during its pendency settlement negotiations resolved the outstanding judgment by payment of the sum of $700,000 to Mr. Sanders and his attorneys.

52. At the time of the settlement negotiations, the Home Insurance Company had already announced its position that under the contract of insurance no coverage was afforded the instant loss.

53. In connection with the settlement, Mr. Sanders executed a Release of All Claims in favor of Arkansas Power & Light Company.

Findings 1–53 were agreed to by the parties.

The Court makes these additional findings of fact:

54. Policy No. HEC 4–16–59–11 was in force at the time Sanders was injured, and defendant was bound by its terms (PX 1).

55. On July 18, 1974 Sanders, an employee of Arkansas Missouri Power Company, was injured while acting within the course and scope of his employment.

56. Sanders filed a Workers' Compensation Claim for his bodily injury.

57. Pursuant to the Arkansas Workers' Compensation Law, Sanders received payment of medical expenses and wage loss benefits as a result of that bodily injury.

58. The Home Insurance Company paid $252,948.95 in Workers' Compensation benefits to Sanders pursuant to the coverage provided by the excess liability policy, number HEC–4165911, in force during 1974.

59. Paragraph 7 of the Joint Petition provides in part that "the Respondents (Arkansas Missouri Power Company and Home Insurance Company) will be completely relieved and discharged from any and all liability and responsibility of every kind and nature arising by reason of or related to the alleged accident, injuries, disabilities, known or unknown, developed or which may develop; and the Respondents will have no further liability or responsibility to said Claimant in the future on account of the alleged accidental injuries, disabilities or any consequences that might exist or arise."

60. The liability assumed by plaintiff in the oral contract to continue Sanders on the payroll was not in the language of the insurance contract; nor was it in the contemplation of the parties to the insurance contract. Nor was it the intention of the parties that such coverage be afforded.

## CONCLUSIONS OF LAW

1. The Court has proper jurisdiction of this action pursuant to 28 U.S.C.A. § 1332.

2. The language of the excess liability policy issued by the Home Insurance Company to Middle South Utilities and its subsidiaries is not ambiguous.

■ 3. The Arkansas Workers' Compensation Act was the exclusive remedy for Sanders for the bodily injury he suffered on the job on July 18, 1974, and as such the Act would be a bar to any cause of action filed by Sanders against his employer based upon that bodily injury. *C & L Rural Electric Cooperative Corp. v. Kincaid*, 221 Ark. 450, 256 S.W.2d 337 (1953).

4. Any claims by Sanders against Arkansas Missouri Power Company, or its successor corporation, Arkansas Power and Light Company, resulting from the bodily injury to Sanders were settled and released by Joint Petition on October 1, 1981 (DX 1).

5. The lawsuit filed by Sanders against Arkansas Missouri Power Company in the Circuit Court of Mississippi County, Arkansas was based upon a breach of contract. The jury in that case found a breach of contract and awarded damages to Sanders as a result of that breach of contract. (PX 3.)

■ 6. Personal injuries, as used in the excess liability policies, do not include breach of the oral contract to keep Sanders on the payroll. *Heritage v. Board of Education*, 447 F.Supp. 1240 (D.Del.1978).

7. Contractual liability for damages from personal injuries, as used in the excess liability policy, does not include breach of a contractual duty or damages for a breach of a contractual duty as was found in the lawsuit filed by Sanders against Arkansas Missouri Power Company. *Continental Casualty Co. v. Alexis Dupont School District*, 317 A.2d 101 (Del.1974).

8. A cause of action for a breach of contract does not accrue until the breach occurs. The breach of contract by Arkansas Missouri Power Company occurred in 1976.

9. The applicable policy period was January 1, 1976 through January 1, 1977 at which time excess liability policy number HEC 9006949 was in effect. This policy provided for a self-insured retention of one million dollars.

■ 10. Waiver and/or estoppel cannot act to create coverage under an insurance policy where coverage did not initially exist. *Looney v. Allstate Ins. Co.*, 392 F.2d 401 (8th Cir.1968); *Peoples Protective Life Ins. Co. v. Smith*, 257 Ark. 76, 514 S.W.2d 400 (1974).

11. The excess liability policies issued by Home Insurance Company to Middle South Utilities, Inc. and its subsidiaries were indemnity policies whereby no duty was imposed upon Home Insurance Company until Middle South or one of its subsidiaries were held legally liable to pay sums as damages for personal injuries. *C & L Rural Electric Cooperative Corp. v. American Casualty Co.*, 199 F.Supp. 220 (E.D.Ark.1961); *Carter v. Adamson*, 21 Ark. 287 (1860).

12. No coverage is provided by the excess liability policies issued by Home Insur-

ance Company to Middle South Utilities, Inc. and its subsidiaries for the judgment and/or settlement of the damages awarded to Sanders in the Mississippi County lawsuit filed by him against Arkansas Missouri Power Company.

13. Even if coverage might be provided, the issue is moot since the applicable policy period was January 1, 1976 through January 1, 1977 when the self-insured retention was one million dollars, which is obviously more than the $700,000.00 paid by Arkansas Power and Light Company in settlement of the Sanders' judgment and litigation.

14. The insurance contract entered into by the parties did not by any stretch of the imagination contemplate the type of contractual liability which plaintiff incurred by reason of the oral promise of its agents. The insuring agreement provides that "the policy is to indemnify the named insured ... for any and all sums which they, the insured, shall be legally liable to pay, and shall pay or by final judgment be adjudged to pay (subject to the limitations hereinafter mentioned) as damages for personal injuries ... resulting from any activity, trade, or business of the insured, including all liability arising under any Workmen's Compensation Law...." (PX 1.)

15. The plaintiff principally relies upon the language of paragraph (4) of the insurance policy which reads as follows:

It is hereby understood and agreed that this policy is extended to include Contractual Liability under contracts or agreements entered into by the Insured, such liability being limited to liability for loss of life or personal injury, sickness or disease, or property damage as already defined in the wording hereof. It is also understood and agreed that this policy shall indemnify the Insured for any and all sums which they may be liable to pay as damages for personal injury, sickness or disease to one or more of their employees by reason of such contractual liability, anything contained herein to the contrary notwithstanding.

16. The inclusion of the paragraph such as No. 4 in the policy in question is necessary because of the prevalence of indemnity contracts in today's business world. It is often necessary that business organizations, such as this plaintiff, should enter into indemnity agreements to indemnify others for bodily injuries. Such agreements are standard in the construction industry, and in Arkansas can be used to indemnify even against one's own negligence providing the language is clear, unequivocal and certain. *Pickens-Bond Const. Co. v. North Little Rock Electric Co.,* 249 Ark. 389, 459 S.W.2d 549 (1970). Indemnity by operation of law (such as the old active-passive negligence doctrine and primary-secondary negligence doctrine) has virtually disappeared except in the principal-agent and manufacturer-distributor situation. Today liability in indemnity for personal injury almost always arises by virtue of contract. *See* H. Woods, *Some Observations on Contribution and Indemnity,* 38 Ark.L.Rev. 44, 6 (1984).

17. A person may acquire personal injury liability through tortious breach of a contract entered into for the benefit of third parties. Such a contract was that in *Hogan v. Hill,* 229 Ark. 758, 318 S.W.2d 580 (1958) where a highway contractor breached a contract provision inserted for the benefit of the traveling public. The plaintiff herein may well enter into such a contract and acquire liability for personal injury from a breach thereof. Such liability will be covered by paragraph (4) of the insurance contract.

18. Liability for personal injury based on the implied warranties of the Uniform Commercial Code, Ark.Stat.Ann. § 85–2–316, et seq. (Supp.1973) is grounded in contract in the view of many authorities. Certainly, express warranty is a contract theory on which recovery for personal injury may be based.

19. Liability for personal injury based on indemnity, tortious breach of contract or breach of warranty is the type of personal injury related to contract within the contemplation of the parties when they en-

tered into the insurance contract herein (PX 1). It was never meant to cover, and it did not cover an oral agreement to pay an employee his salary. If such a contract were covered by this policy, so would any agreement to employ plaintiff's wife or children because of his injury.

20. The complaint of Arkansas Power & Light Company against Home Insurance Company is dismissed with prejudice.