NEW YORK MARINE MANAGERS, INC., Appellant,

v.

HELENA MARINE SERVICE, et al., Appellees.

TECO TRANSPORT, et al., Appellees,

v.

NEW YORK MARINE MANAGERS, Appellant.

TECO TRANSPORT, et al., Appellees,

v.

PENDLETON HARBOR, et al., Appellants.

PENDLETON HARBOR, et al., Appellees,

v.

CONSOLIDATED GRAIN & FEDERAL INS., Appellant.

TECO TRANSPORT, et al., Appellants,

v.

PENDLETON HARBOR, et al., Appellees.

PENDLETON HARBOR, et al., Appellees,

v.

PEAVEY, et al., Appellants.

Nos. 84–1927, 85–1195, 85–1196, 85–1229, 85–1230 and 85–1235.

United States Court of Appeals, Eighth Circuit.

Submitted March 11, 1985.

Decided March 29, 1985.

Rehearing and Rehearing En Banc Denied May 13, 1985.

Charles M. Steen, New Orleans, La., for Pendleton.

Edward F. Lebreton, III, New Orleans, La., for New York Marine.

Elmer Price, St. Louis, Mo., George R. Alvey, Jr., New Orleans, La., Raymond Massey, St. Louis, Mo., and Stephanie Grogan, Washington, D.C., for claimants.

Before HEANEY, ROSS and FAGG, Circuit Judges.

PER CURIAM.

These related appeals and cross-appeals arise from an order of the district court[1] entered on January 24, 1985, following proceedings which were conducted pursuant to a remand order of this court, *New York Marine Managers, Inc. v. Helena Marine Service, Inc., and Pendleton Harbor Service, Inc.,* No. 84–1927 (8th Cir. Dec. 20, 1984). We affirm the district court order and remand only to direct the district court to lift the stay of its November 19, 1984 order and to amend its January 24, 1985 order to conform to the language set forth on page 9 of this opinion.

## I. Background

On December 4, 1982, a number of barges owned, operated or chartered by Helena Marine Service, Inc. and Pendleton Harbor Service, Inc. (Helena/Pendleton) were washed away from their moorings on the Arkansas River during a storm. The barges were swept down river and allegedly damaged other barges and cargoes, a wharf and a dam. Damages are alleged to amount to approximately $12,000,000. Helena/Pendleton has a primary insurance policy in the amount of $1,000,000, and an excess insurance policy, issued by New York Marine Managers, Inc. (New York Marine), as agent for various underwriters, in the amount of $5,000,000.

On June 3, 1983, Helena/Pendleton and other limitation petitioners filed five actions pursuant to the Limitation of Liability Act, 46 U.S.C. §§ 181–195, in the district court for exoneration from or limitation of liability in connection with the vessels allegedly involved in the breakaway. Helena/Pendleton filed *ad interim* stipulations for value purporting to assign the proceeds

---

1. The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas.

of the excess policy as Supplemental Admiralty Rule F security. Claimants filed motions to dismiss the limitation proceedings based upon the inadequacy of the stipulations as Rule F security.

During the pendency of the motions to dismiss in the limitation proceedings, New York Marine filed a separate action, which was assigned to a different judge, seeking a declaration that it had no obligation to post security in the limitation proceedings. Helena/Pendleton counterclaimed for a reverse declaration, and on July 3, 1984, the declaratory judgment action was tried before Judge Overton. Claimants were not given notice of the declaratory judgment action and were not present during that proceeding. Judge Overton entered judgment on July 13, 1984, in favor of Helena/Pendleton. On July 23, 1984, New York Marine filed a notice of appeal.

During the pendency of the appeal, Judge Howard, who was presiding over the limitation proceedings, entered an order on November 19, 1984, requiring Limitation Petitioners to establish limitation funds in the form of unconditional corporate surety bonds in the amount of $3,401,000, plus interest. Judge Overton, who presided over the declaratory judgment action, then ordered New York Marine to post the surety bond on behalf of its insureds, Helena/Pendleton. The November 19, 1984 order was then stayed pending the outcome of the appeal of the declaratory judgment action.

Following oral argument, this court entered an order on December 20, 1984, remanding the declaratory judgment action to the district court for further proceedings. The declaratory judgment action was consolidated with the limitation actions and assigned to Judge Howard. Judge Howard, pursuant to the remand order, conducted a hearing at which claimants for the first time presented their views on the issues raised in the declaratory judgment action. Following the remand hearing, Judge Howard entered an order relieving New York Marine of the obligation to post security in the limitation proceedings but requiring New York Marine to deposit in the registry of the court the bumbershoot policy proceeds minus any disbursements already made. These appeals and cross-appeals followed.

## II. Discussion

The only issues now before the court are: 1) whether New York Marine is required to post the security in the limitation actions; 2) if they are not, whether they are required to deposit the policy proceeds in the registry of the court; and 3) whether the Limitation Petitioners are required to post the security.

New York Marine argues that it is improper to require it to post security in the limitation proceedings because no provision of the policy or custom in the marine insurance industry requires it to post security when the result is to expose New York Marine to a potential risk of exposure beyond its policy limits. While Helena/Pendleton concedes that no express provision in the policy requires New York Marine to post security, they maintain that the duty may be implied from Condition D of the policy and the custom and practice in the industry.

Having read the policy and having considered the evidence of industry practice, we find that we are persuaded by New York Marine's arguments, especially in light of the position of the claimants.

It is the opinion of this court that Condition D which states in part that the " * * * Underwriters shall cooperate in all things in the defense of such claim, suit or proceeding" is insufficient to impose an obligation on New York Marine to post security absent a specific custom in the industry to do so. We think, that under the circumstances of this case, such an implied duty may only be imposed based upon a custom and practice that is certain, uniform, definite and known to both parties. *See, e.g., Peoples Protective Life Insurance Co. v. Smith,* 257 Ark. 76, 514 S.W.2d 400, 405 (1974).

We have carefully considered the evidence of industry practice presented in the declaratory judgment action. Although there was evidence that generally marine insurance underwriters assist their insureds in providing security, there was no specific evidence that underwriters post security, absent an express agreement, when it exposes them to a possible extension of the policy limits. In fact, when pressed on this point, no witness had ever encountered the situation presented by this case. Hence the evidence of custom lacks certainty and specificity and cannot provide an adequate basis for the imposition of an implied duty upon New York Marine to post security in the limitation proceedings.

By posting the Rule F security New York Marine could be subjected to a risk of liability beyond the policy limits if nonlimitation claimants filed actions outside the limitation proceedings and succeeded in arguing that the posting, by the bumbershoot underwriters, of the Rule F security did not deplete the policy proceeds. We think this risk is more than hypothetical, especially in light of the position taken below by the United States, the primary nonlimitation claimant. However, it is not only our concern for New York Marine's exposure that leads us to our conclusion. Because this is an equitable proceeding the court must also consider the rights of all claimants in addition to considering the rights of the insureds and the insurors. To require New York Marine to post security in the limitation proceedings under the circumstances of this case may create a priority in favor of those claimants with limitable claims over claimants with nonlimitable claims. It is the view of the court that such a result is not desirable or proper at this stage of these proceedings.

We therefore hold that New York Marine is not required to post security for Helena/Pendleton in the limitation proceedings because there is no express provision in the policy, or any certain and specific evidence of custom within the marine insurance industry requiring an underwriter to post security in limitation actions and risk exposure beyond the policy limits in related nonlimitation actions and because equity requires us to protect all parties at this stage of the proceedings.

We next consider whether New York Marine must deposit the policy proceeds minus its disbursements in the registry of the district court. New York Marine objects to such a requirement and contends that requiring it to deposit the policy proceeds before any judgment is entered in the limitation proceedings is without authority or precedent. We find that requiring New York Marine to deposit the policy proceeds is within the equitable powers of the district court sitting in admiralty and not an abuse of discretion under the circumstances of this case. "A limitation proceeding is 'the administration of equity in an admiralty court' and 'all the ease with which rights can be adjusted in equity is intended to be given to the proceeding.'" *Moore-McCormack Lines, Inc. v. Richardson*, 295 F.2d 583, 597 (2d Cir.1961), *cert. denied*, 368 U.S. 989, 82 S.Ct. 606, 7 L.Ed.2d 526 (1962) (citations omitted). As for the amount to be deposited, this court adheres to its earlier suggestion that the amount to be deposited by New York Marine should be the limit of the policy minus the disbursements already paid as of the date of this opinion. The court makes no determination at this time as to any question relating to attorney fees and who pays them. Specifically, we do not decide whether they are deductible from the limits of either the primary or bumbershoot policies or whether they are in addition to the policy limits in one or both policies. Although we affirm the requirement to deposit the bumbershoot policy limits less prior disbursements, it may later be determined that the bumbershoot underwriters or the primary underwriters are liable for the policy limits plus attorney fees.

Lastly, we turn to the ruling implicit in the January 24, 1985 order of the district court, namely that the Limitation Petitioners will be required to post a corporate surety bond as Supplemental Admiralty Rule F security. The procedure by

which a shipowner can limit its liability is governed by 46 U.S.C. § 185 and Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims. FED.R.CIV.P. Supplemental Rule F. A vessel owner, seeking the benefits of the Limitation of Liability Act must deposit with the court, for the benefit of claimants, "a sum equal to the amount or value of his interest in the vessel and pending freight, or approved security therefor \* \* \*." Supplemental Rule F(1). Proper security may be posted through 1) physical surrender of the vessel and pending freight to a trustee, 2) a deposit with the court of cash equal to the value of the owner's interest in the vessel and pending freight, or 3) approved security. *Matter of Compania Naviera Marasia S.A.*, 466 F.Supp. 900, 901 (S.D.N.Y. 1979). The posting of proper and adequate security is a condition precedent to obtaining the benefits of the Limitation Act, *id.*, and the district court is well within its discretion to require the Limitation Petitioners to post security in one of the approved forms. We hold that the Limitation Petitioners must deposit cash or post a corporate surety bond in the amount or value of their interest in the vessels or surrender the requisite vessels in order to continue to benefit by the provisions of the limitation of liability statute.

In light of the above, we affirm the January 24, 1985 order of the district court and remand only with directions to lift the stay of its November 19, 1984 order requiring the Limitation Petitioners to post the security and to amend the January 24, 1985 order to include the following language:

The court makes no final determination of several questions which will be held in abeyance until after all claims are decided by this court. These include, but are not limited to:

a) any question relating to the priority of claimants to the insurance proceeds, including priorities as between limitation claimants and nonlimitation claimants and priorities within each of these classes of claimants; and

b) any question relating to attorney fees and who pays them. Specifically left open is whether fees are deductible form the limits of either the primary or bumbershoot policies, whether fees are in addition to the policy limits in one or both policies, and whether the bumbershoot underwriters or the primary underwriters are liable for the policy limits plus attorney fees.