**Charles B. NANCARROW, Appellant,**

v.

**AETNA CASUALTY & SURETY CO., Appellee.**

**No. 90–1779WA.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 14, 1990.

Decided May 9, 1991.

Rehearing Denied July 22, 1991.

W. David Carter, Texarkana, Ark., for appellant.

Jack N. Boyd, Texarkana, Tex., for appellee.

Before McMILLIAN and BEAM, Circuit Judges, and ROSENBAUM,* District Judge.

McMILLIAN, Circuit Judge.

Charles B. Nancarrow appeals from a final order entered in the District Court[1] for the Western District of Arkansas granting a directed verdict in favor of Aetna Casualty & Surety Co. (Aetna) and dismissing his complaint. *Nancarrow v. Aetna Casualty & Surety Co.*, No. 89-4026 (W.D.Ark. Apr. 23, 1990) (order). For reversal, Nancarrow argues the district court erred in granting a directed verdict in favor of Aetna because (1) Aetna was estopped from asserting or had waived the defense of non-occupancy and (2) there was sufficient evidence in the record to support a jury finding that he used the premises as his principal residence. For the reasons discussed below, we affirm the order of the district court.

For many years Nancarrow owned and lived in a house on Beech Street in Texarkana, Arkansas. The house had been insured since 1970 under a homeowner's insurance policy issued by Aetna. In 1984 Nancarrow married and moved out of the Beech Street house and into an apartment. Nancarrow and his wife planned to renovate the Beech Street house and move back when the renovations had been completed. Nancarrow left furniture and other personal belongings in the Beech Street house. Renovations of the Beech Street house were postponed by family illness. Soon after their marriage, Nancarrow's mother-in-law became ill and came to live with them. Nancarrow bought and moved into a house on Maplecrest in Texarkana, Texas. He filed a forwarding order with the post office. Then his wife became seriously ill and died in 1987. In the meantime, in 1986, the Beech Street house was burglarized.

Nancarrow did not inform Aetna that he had moved out of the Beech Street house or that he had changed his mailing address. In 1985 and 1986 Aetna mailed the policy renewal notices to the Beech Street address and the post office forwarded them to Nancarrow's post office box. Nancarrow paid the premiums and the policy was renewed in 1985 and 1986. Employees of Aetna's local insurance agent had been informed about the 1986 burglary and, upon inspection, noticed that a door had been boarded up and the house appeared to be in poor condition. In 1987 Aetna sent the policy renewal notice to the Beech Street address. However, because the forwarding period had expired, the post office did not forward the renewal notice or the notice of cancellation and returned the notices to Aetna. Aetna then forwarded the notices to the local insurance agency. One of the local insurance agency employees discussed the poor condition of the Beech Street house with an Aetna underwriter. Nancarrow never received the 1987 renewal or cancellation notices and did not pay the 1987 premium. Aetna subsequently cancelled the policy for nonpayment of the premium.

In March 1988, almost a year after the effective date of cancellation of the policy, the Beech Street house and its contents were completely destroyed by fire. Water and telephone service had been disconnected, but the electricity and gas utilities were still connected. Nancarrow filed a claim. Aetna denied coverage and refused to pay. Nancarrow then sued Aetna in federal district court to recover the insurance proceeds, the statutory penalty for refusal to pay, interest, and attorney's fees. Nancarrow alleged that the cancellation of the policy was ineffective because Aetna knew that he had a new mailing address and was estopped to deny coverage. Aetna argued in defense that at the time of the fire the policy had been effectively cancelled, the condition of the Beech Street house had so materially changed that it was no longer covered by the policy, and Nancarrow had

---

* The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable Morris S. Arnold, United States District Judge for the Western District of Arkansas.

committed "neglect" as defined in the policy. The case proceeded to trial. However, at the close of plaintiff's case, the district court granted Aetna's motion for directed verdict. The district court found that, even assuming that the policy was in force, the Beech Street house was not covered, as a matter of law, because it was undisputed that, at the time of the fire, Nancarrow no longer occupied the house as his "residence premises" as defined in the policy. Slip op. at 1. The district court also found no waiver or estoppel on the part of Aetna. This appeal followed.

Nancarrow first argues that, assuming that the policy definition of "residence premises" is not ambiguous, the district court erred in granting a directed verdict in favor of Aetna because the jury could have found that Aetna was estopped from asserting or had waived the defense of failure to occupy the "residence premises." He argues that Aetna had learned about his living arrangements from its local insurance agent soon after his marriage in 1984 and had accepted the premiums in 1985 and 1986. Nancarrow also argues that the district court erred in granting a directed verdict because the policy term "residence premises" is ambiguous and there was sufficient evidence in the record from which the jury could have found that he used the Beech Street house as his principal residence. We disagree.

"The granting of a motion [for directed verdict or] for judgment notwithstanding the verdict is appropriate 'only if the evidence points all one way and is susceptible of no reasonable inferences sustaining the position of the nonmoving party.'" *Glass Design Imports, Inc. v. Import Specialties,* 867 F.2d 1139, 1142 (8th Cir.1989) (citation omitted); *see Dace v. ACF Industries, Inc.,* 722 F.2d 374, 375–76 (8th Cir. 1983). We have assumed for purposes of the following analysis that the policy was in force. The policy covered "the dwelling on the residence premises shown in the Declarations used principally as a private residence." The policy expressly defined "residence premises" as "the one or two family dwelling, other structures, and grounds or that part of any other building

where you reside and which is shown as the 'residence premises' in the Declarations." The policy declarations described only the Beech Street house as the "residence premises." Viewing the evidence in the light most favorable to Nancarrow as the nonmoving party and giving him the benefit of all reasonable inferences to be drawn from that evidence, we agree with the district court that no reasonable jury could have found that Nancarrow resided in the Beech Street house at the time of the fire. The evidence in the record showed that Nancarrow had not lived in the Beech Street house since 1984, he only visited the house occasionally, the house was in an obvious state of disrepair, and the water and telephone service had been disconnected.

Nor can we agree that the district court erred in holding Aetna was not estopped from asserting or had not waived the defense of non-occupancy. Even assuming for purposes of analysis that Aetna had renewed the policy even though it knew that Nancarrow no longer lived in the Beech Street house, estoppel or waiver based upon the conduct of the insurer cannot enlarge or extend coverage as defined in the policy or create coverage. *See, e.g., Arkansas Power & Light Co. v. Home Insurance Co.,* 602 F.Supp. 740, 745 (E.D. Ark.1985); *Peoples Protective Life Insurance Co. v. Smith,* 257 Ark. 76, 514 S.W.2d 400, 406–07 (1974). Thus, the renewal of the policy, even with the knowledge that Nancarrow no longer lived in the Beech Street house, could not extend coverage to risks not initially covered by its terms, that is, to an unoccupied dwelling.

Accordingly, the order of the district court is affirmed.